### No. 8969.

CARTER BROS. & CO. VS. GALLOWAY & BURNS.—KIRKPATRICK & CO., GARNISHEES.

Whoever deals with a partner, who uses the partnership name to direct that partnership property be applied to his individual purposes, is put on his guard by the very nature of the transaction which is beyond the scope of the partner's authority. If he carries out such instructions, he does so at his risk and peril.

One who has thus dealt, in whose hands the property is attached by a partnership creditor and who disposes of it, notwithstanding the seizure, and diverts the proceeds, accord ing to the partner's instructions, is liable to the creditor, *unless* he affirmatively proves that the other partner had assented, previous to the seizure, to the disposition of the assets.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Chas. S. Rice* for Plaintiffs and Appellees.

*Branch King Miller* for the Garnishees, Appellants.

The opinion of the Court was delivered by

MANNING, J. In a suit by the plaintiff firm against the defendant firm of Trezevant, Tenn., for $2,076.58, a writ of attachment issued, and Kirkpatrick & Co. of this city were served with interrogatories and process of garnishment. They answered, denying any indebtedness, whereupon a rule was taken to traverse their answer. In the main suit there was judgment in favor of the plaintiffs for their demand, less $692.19, received by them from the defendants since the institution of this suit, and also against the garnishees for $764.50 with interest. The garnishees appealed.

Galloway & Burns had a running account with the appellants. They failed, and made an assignment on February 9, 1882 in Tennessee, eleven days before this attachment was issued. Kirkpatrick & Co. had received from Galloway & Burns ten bales of cotton on Nov. 21, 1881, and a bill of lading therefor accompanied by a letter of instructions, and eleven bales on Feb. 8, 1882 with bill of lading and a letter of instructions, the purport of the instructions for both shipments being to hold for account of W. H. Galloway, the senior member of the defendant firm. These instructions were without the knowledge of his partner. Galloway had been speculating in futures, and his directions were that these twenty-one bales should be held as margin for his private speculation.

A partner cannot divert property belonging to the firm to his own use, and any one dealing with him and knowing the facts will be deemed to have acted in bad faith, and in fraud of the partnership, and the transaction by which the funds or securities of the partnership have been so obtained will be treated as a nullity. Story on Partnership, § 132. He who knows that the partner's act is not within the firm-business, knows that it is not authorized, and when he knows that the partner is acting for his own immediate and several benefit,

he cannot presume that the firm authorizes it. Parsons on Partnership, 228. A party taking the paper of a firm with the knowledge that it was given for the private or personal debt of one of the partners, knows enough to put him on his guard, and is bound to inquire whether the firm authorized the use of its name Ibid. 121. The principle applies to the property of a firm equally as to its paper.

Kirkpatrick & Co. received these shipments from the firm in the same manner as they had received others—the bills of lading drawn in the same way—and all others had been placed to the account of the firm except these two. They are therefore charged with knowledge that one of the members of the firm was diverting its property to his own use, and must therefore be held to accountability for it to the firm, or the firm's creditors.

Oral objection was made that the garnishees were owners of the proceeds of this cotton, and that their title could not be attacked except in a direct action, on the authority of Ivens' case, 30 Ann. 249. No exception was made to the rule to traverse, nor any plea filed, nor even oral objection (we are informed) to the trial of the rule. So serious a question as that of title, entailing the legal consequence of a direct action for its attack, ought surely to have appeared by written exception or plea. Florance v. York, 2 Ann. 996. Slatter v. Tiernan, 12 Ann. 376. The objection was not made until the argument. If valid, it should have been made sooner, and should have been put formally on record. This was said explicitly by the Court in Florance v. York *ut supra.*

Judgment affirmed.

---

## ON APPLICATION FOR REHEARING.

We have determined to grant a re-hearing of this cause because of doubt whether we were correct in saying that Kirkpatrick & Co. are charged with knowledge that one of the members of the firm was diverting its property to his own use, and must therefore be held to accountability for it to the firm's creditors.

The letters of instructions were signed in the firm-name, and it may be that in the absence of complaint by Burns, a creditor would be powerless to interfere to prevent the disposing of the property otherwise than was ordered in those letters, or to hold Kirkpatrick responsible for obeying the direction contained in them. The attention of Counsel is directed to that view of the matter.

Rehearing granted.

## On Rehearing.

BERMUDEZ, C. J. The admissions and the evidence establish that Galloway, using the name of the firm, Galloway & Co., without the knowledge of his co-partner, Burns, shipped cotton to Kirkpatrick & Co., with instructions to apply the proceeds to his individual purposes.

It likewise appears that the cotton was received in November, 1881, and on February 7, 1882; that the writ of attachment was issued and garnishment proceedings served on February 20, 1882; that the cotton was sold on the 25th and 27th following; *five* and *seven* days *after* service of the process.

The rule traversing the answers of the garnishees, Kirkpatrick & Co., has for its object to hold them responsible for the proceeds of the cotton, which they are practically charged ·with having wrongfully diverted and applied. The argument advanced to exonerate them is: that they were the agents of Galloway & Burns; that they cannot be held responsible for having, as such, executed the instructions or orders of their principals; that as those principals could not hold them liable, no creditor of theirs, who has no greater righter than they possess, can be permitted to do so.

This is a glaring fallacy. It is not true that the firm authorized them to hold the cotton for account of Galloway, individually.

The cotton was shipped by Galloway & Co. to Kirkpatrick & Co. The letter of instructions was written by Galloway, in the name of the firm, but without the knowledge of the other partner, Burns. Kirkpatrick & Co. knew that the letter was thus written. They knew that the proceeds of partnership property were ordered by one partner, without the authority of the other, to be diverted and applied to his purposes. They were put and should have been, in law, on their guard under that state of facts, and should either have absolutely refused the consignment, or received it declining to carry out the instructions to misapply, until the consent and authority of Burns had been clearly obtained. Having failed to require that consent and having carried out the illegal instructions, they have acted at their risk and peril and should stand the consequences of their imprudence and rashness, *the more so, as they sold the cotton, several days after the garnishment proceedings had been served on them.*

There is no better settled principle of commercial law than, that a partner cannot use partnership property for his individual purposes, without the consent or authority of his co-partner or partners and that when he attempts to do so, parties dealing with him are, by the very

fact or nature of the transaction, warned and put on their guard, and that if the same is consummated, the burden of proving the knowledge, consent or authority of the other members rests upon such parties, who, when sought to be made responsible, must, at their risk and peril, succeed or fail according as they may or may not prove such ratification.

There can be no doubt that Burns, the partner whose consent or authority was necessary and not obtained, could recover from the consignees for the wrongful misapplication, otherwise, he could be spoliated by a derelict partner and his accomplices, without any remedy, which is a legal impossibility. What rights he had or could exercise, accrue to the creditors of the firm when claims are liquidated by a final judgment which has become executory.

Story on Partnership, par. 132, says: that in such cases the party dealing with the partner and knowing the circumstances will be deemed to act *mala fide* and in fraud of the partnership, and the transaction by which the funds, securities or other effects of the partnership have been so obtained will be treated as a nullity  \* \* \*  for it is a clear misapplication of the partnership credit. He further correctly adds: that the case would be different where the other partner has directly or by fair implication authorized or confirmed the application of the partnership effects *to the very purpose.* (133.)

In 12 Pet. 221, Rogers vs. Batchelor, which is a leading case, Mr. Justice Story, after a review of applicable precedents, substantially held: that the true principle to be extracted from the authorities is that one partnership cannot apply partnership property for his own advantage without the consent of his co-partners; that without such consent title to the property is not diverted in favor of the party whether he knew it or not to be partnership property. *"In short, his right depends, not upon his knowledge that it was partnership property but upon the fact, whether the other partners had assented to such disposition of it or not."* p. 232.

The law, says the Supreme Court of Virginia, in a similar suit and referring to the Rogers case, is now generally considered as accordingly settled. Sec. 1, Am. Lead. Cas. 5th Ed., May, p. 453; Liberty Savings Bank vs. Campbell, July term, 1881, No. 24, Vol. XII, p. 766; Reporter of 1881.

. In the absence of Burns' consent or authority, title to the proceeds of the cotton continued to vest in the firm of Galloway & Co., the application of them by Kirkpatrick & Co. was unauthorized and illegal and they should be held liable for the same.

Parsons is to the same effect. 121 and 128.

This doctrine was also emphatically recognized and applied by the present Court in 33 A. 1308 and 1315, after a full review of the authorities applicable in such instances.

In the later case of Allen, Nugent & Co. vs. Cary et al. we distinctly held, supported by unquestionable precedents, that even where a partner, acting apparently beyond the limits of his authority, untruly states his co-partner's consent, his representations will not bind them, even in favor of parties dealing with him although in good faith, for the reason that it is the duty of every one who deals with a member of a commercial firm, out of the line of the business of the partnership, to require evidence of that partner's special authority to bind his co-partners, and this at his risk and peril. 33 A. 1455.

From a recent case decided by the Supreme Court of Maine, reported in 10 Central L. T. p. 388 (Johnson vs. Hersey), it appears that a bank held the individual note of one of the members of an insolvent firm who without the knowledge of his co-partner drew the partnership funds in the bank to pay the note, and that the Court decided that the character of the transaction was notice to the bank of the character of the funds, and that the attachment levied could be sustained by the creditors.

In Caldwell vs. Scott, 54 N. H., the Court recognized the right of creditors to repudiate such diversions and to hold the delinquent parties responsible.

It would be indeed cumbersome to quote authorities in support of a proposition of law so manifestly correct.

It is immaterial whether the consignment and instructions be in one and the same or in different papers. If transactions so reprehensible and injurious to others concerned can be tolerated and enforced, when accomplished under cover of authority delegated by the same authority, the law eminently protective of partners and of partnership creditors becomes a delusion, easy to be successfully evaded. Partners and creditors would be unmercifully victimized by sanctified miscreants.

The law never designed that such transactions should be upheld, and the argument urged by counsel of the garnishees is simply heterodox in the extreme.

It is, therefore, ordered that our previous decree remain undisturbed.

### DISSENTING OPINION.

FENNER, J. I do not controvert the correctness of the general principles announced in the majority opinion, but I think their application, under the facts of this case, is dominated by superior principles of the law of mandate.

The bills of lading for the twenty-one bales of cotton, here in contro-
versy, were enclosed to the consignees in letters signed in the firm
name of Galloway & Burns, and giving the instructions to hold the
cotton for account of W. H. Galloway to reimburse margins advanced
or to be advanced upon certain future delivery cotton contracts which
had been entered into for him.

These letters, with the enclosed bills of lading, constituted the indi-
visible mandate under which the consignees received and held the cot-
ton. They had the right to accept and act upon it as a whole. Until
otherwise notified, they were not subjected to the duty of inquiring into
the authority, but had the clear right to assume that the authority to
ship the cotton included authority to direct the disposition of the pro-
ceeds. A different rule would impose upon factors responsibility which
the law has never contemplated.

If the instructions were unauthorized, and if the firm or its creditors
had asserted claims upon the cotton before the consignees had acted
upon the instructions in such manner as to alter their position, then
such claims might be enforced. But if acting in good faith upon the
instructions the consignees had made advances for Galloway's account
or otherwise incurred liabilities for him, before advised of the want of
authority, they are entitled to protection.

The case cannot be distinguished, in principle, from that of Bullitt
vs. Walker, 12 Ann. 276. There, the bill of lading was in the name of
John S. Mitchell "for account of William Walker," and was accompa-
nied by a letter of instructions from Mitchell in these words: "I ship
you to-day, per express, corn, which please sell for the best price you
can and credit *my* account with the proceeds. Make account sales *for
account of Wm. Walker.*"

It thus presents the clear case of an avowed agent shipping for ac-
count of a named principal and directing the proceeds to be applied to
his own credit. Certainly it will not be denied that the power of a
partner, acting in the name of his firm to direct the application of firm
assets to his individual credit, is at least as great as that of any other
mandatary to make similar application of his principal's property.
Hence, the case fully applies. Now, in the case referred to, the con-
signees, acting on the instructions, paid drafts of Mitchell beyond the
value of the corn. Creditors of Walker then proceeded against the
consignees by garnishment.

The Court held that, having paid Mitchell's drafts upon the faith of
the instructions accompanying the shipment, before advised of any

want of authority, the consignees were entitled to protection, saying that although "the mention of Walker's name in the bill of lading and letter of advice conveyed to the consignees knowledge of his interest," yet "the consignees had no mission to protect Walker from a misappropriation of his funds by his agent, Mitchell."

In the same case, however, other garnishees who had received corn under like instructions but who had not sold it at date of garnishment, and who were not shown to have made advances on the faith of the shipment but sought to apply the corn to a former account, were held liable to the true owner's creditors under the garnishment: though, from this part of the decision, two of the ablest justices, Slidell and Lea, dissented.

·The question in the case, therefore, is whether or not, after the consignment and upon the faith of the instructions, the consignees, Kirkpatrick & Co., had made advances or incurred liabilities for W. H. Galloway before the garnishment? If so, to that extent they should be protected.

Owing to the omission from the transcript, by consent, of the account of W. H. Galloway offered in evidence, we could not determine the dates of the advances made for his account, but I think the case should be remanded for the purpose of settling that point.

For these reasons, I dissent from the opinion and decree.

Mr. Justice Todd concurs in this opinion.