(86 South. 558)

No. 22375.

## WUERPEL et al. v. SINNOTT (SAXON et al. Garnishees).

(Nov. 3, 1920.)

*(Syllabus by the Court.)*

1. **Garnishment ⬅⟶158—Amended traverse of answer held barred by prescription.**

    Where, in a rule traversing the answers of a garnishee, a particular asset is expressly excluded from attack, both in the allegations of the rule and the prayer for judgment, the situation, quoad such asset, is as though no rule had been taken, and an amended traverse, filed long after the expiration of the delay allowed for such traverse, is barred by the prescription of 20 days from the notification of the filing of the answers to interrogatories established by Act No. 73 of 1884.

2. **Attorney and client ⬅⟶182(1)—Attorney cannot appropriate money intrusted to him for benefit of depositor's creditors.**

    Where an attorney receives a sum of money with the understanding between the depositor and himself that it is to be held in trust and intact for the benefit of certain creditors of the depositor, he cannot appropriate it, or any part of it, to the payment of a fee alleged to be due to him by such depositor.

3. **Garnishment ⬅⟶158—Failure to object to form of proceeding traversing garnishee's answers held waived.**

    Where a garnishee makes no objection to a proceeding traversing his answers to determine the question of his liability for funds in his hands upon which he claims certain rights, the objection to the form of the proceeding will be considered waived.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by A. C. Wuerpel and others against Charles J. Sinnott, wherein Lyle Saxon and others were garnished. Judgment for plaintiff was rendered against the garnishees, and they appeal. Modified and affirmed.

Lyle Saxon, of Dallas, Tex., and Wm. Winans Wall, of New Orleans (Sol. Weiss, of New Orleans, on the brief), for appellant.

Charlton R. Beattie, of New Orleans, for appellees.

## Statement of the Case.

MONROE, C. J. On December 3, 1913, plaintiffs, as trustees of the bankrupt Smith Bros. Company, Limited, brought suit against the defendant, Charles J. Sinnott, for $55,616.05, with interest; and on December 9 following defendant, through his attorneys, Lyle Saxon, E. N. Pugh, and Charles J. Theard, answered, admitting the debt, whereupon, on motion of plaintiffs, through counsel, judgment was rendered upon the petition and answer as prayed for.

Thereafter execution was issued, and Lyle Saxon, Armand Romain, and Charles J. Theard were garnished, and on February 17, 1914, Saxon answered the interrogatories propounded to him, saying that he had in his hands a balance of $1,092.05 left from the proceeds of sale of property belonging to defendant, which he held subject to the following claims and conditions, to wit:

That on July 28, 1913, defendant, acting through Robert G. Guerard, real estate agent, had sold certain property, No. 2033 Peters avenue, in New Orleans, for $10,500 (the act of sale having been passed on August 12, 1913), from which there had been deducted amount of a mortgage, "payable to homestead," $6,000, amount due notary, bill for taxes, cost of certificate, cancellation of mortgages, etc., $144.70, and commission of Guerard, $315, leaving a balance turned over to respondent of $4,040.30, from which amount the following further reductions were authorized by defendant, to wit:

"Fee for respondent for services rendered and to be rendered as per written contract with Charles J. Sinnott under date of August 8, 1913, said services being in the matter of litigation, in Re Smith Bros. Company, and the estate of the said Charles J. Sinnott's mother, and any and all litigation in which Charles J. Sinnott might be interested, which sum has

been deducted and used by respondent, for his fee, $2,500; costs expended in various suits of said Charles J. Sinnott, James B. Sinnott, Jr., and Henry Lee Sinnott, deducted from said fund, $48.25; taxes paid on property, being state taxes for 1913, by authority of Charles J. Sinnott, being on property in which Charles J. Sinnott, Henry Lee Sinnott, and Jas. B. Sinnott, Jr., are interested, $400. That, at the solicitation of Charles J. Sinnott, and on behalf of the said Charles J. Sinnott, the said Charles J. Sinnott authorized your respondent to hold in his hands any balance that he might have, after making the above deductions, for the reason that your respondent signed a bond for the sum of $2,500 for Henry Lee Sinnott and James B. Sinnott, Jr., brothers of Charles J. Sinnott, in the suit * * * wherein the said Henry Lee Sinnott and Jas. B. Sinnott, Jr., secured an injunction restraining the plaintiffs, and that this said balance of $1,092.05 is held pending the determination of the litigation, and, if the said Jas. B. Sinnott and Henry Lee Sinnott be cast in judgment and held for damages, then the said sum is to be applied to the payment of the said damages that might accrue, if any, * * * and hence that he is not indebted to the said Charles J. Sinnott in any sum whatever."

On March 23, 1914, plaintiffs were notified of the filing of the answers, and on April 16 following they traversed the same, alleging that the garnishee had received the proceeds in question in trust and as a fiduciary, pursuant to an agreement between him, acting for himself and for Charles J. Sinnott, and plaintiff, acting as a committee for the creditors of Smith Bros. Company, Limited (to which concern Sinnott was largely indebted), to the effect that the full proceeds of said sale, less the mortgage, should be turned over to the said Smith Bros. Company, or its representatives, for the benefit of said creditors, which agreement was entered into prior to the agreement as to respondent's fee and before any services were rendered by him or contemplated; that Charles J. Sinnott had no interest in such alleged services; that said alleged agreement was entered into for the purpose of consuming and exhausting the fund in question, which should be devoted to the payment of Sinnott's creditors; and that its application to the payment of said fee, or to respondent's claim to be held harmless on account of the bond signed by him, would be a fraud upon their rights. The prayer of the rule is:

"That the alleged authorization of said Saxon to apply the proceeds of the sale of said property in the manner set forth in the answer of said Saxon be annulled, as in fraud of the rights of plaintiffs, and that said Saxon be ordered and decreed to pay the full amount of said proceeds of such sale, less the mortgage, resting upon said property and deducted before the payment of the same into the hands of said Saxon, to plaintiffs, and for costs and general relief."

The rule traversing the answers of the garnishee was not fixed for trial until March 10, 1916, nearly two years after plaintiffs had been notified of their filing, and the trial was then opened by plaintiffs calling Charles J. Sinnott to the stand and identifying him as the defendant in the suit, after which the proceedings were as follows:

"Q. Mr. Lyle Saxon, the garnishee herein, has filed certain answers to the questions asked him whether he owed you any money at the time these proceedings were filed upon him in February, 1914, and he answered that certain property of yours on Peters avenue had been sold, and that he had retained, in the first place, $6,000 as a mortgage on that property. Had that mortgage been paid at that time? By Mr. Wall (attorney for respondent): I object, may it please your honor, to any evidence being received as to this item, because in the traverse the plaintiff admits the validity of the $6,000 mortgage, and doesn't traverse that item of the answer at all, and I submit that under the pleadings this matter cannot be gone into. It comes as a complete surprise, inasmuch as there was nothing in the pleadings to put us on guard. If the gentlemen want to amend their traverse, and let the matter go over until we have an opportunity to defend the matter on that, we have no objection; but on the present pleadings no evidence can be heard traversing the answer with respect to the $6,000 mortgage. * * * By the Court: I don't think that, under those pleadings, the validity of that mortgage can be attacked. By Mr. Beattie

(counsel for plaintiff): Will your honor permit the amendment? Your honor notices, we say, 'less the mortgage.' If there is none, the balance is the whole amount; but, if your honor has ruled, will your honor allow the amendment? By the Court: I will allow you to amend the traverse, but I think, if the garnishee claims to be taken by surprise, that I will have to continue the case until next Friday, unless they want to proceed with it now. By Mr. Wall: On this, I don't know, may it please your honor, what objections I might have a right to urge to this amendment. By Mr. Beattie: I thought you said you had no objection. By Mr. Wall: I know; I said to proceed in the regular way and amend. Mr. Beattie has had all the knowledge he has now for more than a month, and he ought to have attended to this matter before. I don't consent to any amendment of these pleadings, because this traverse has to be filed within a certain time, and it will be necessary for Mr. Beattie to make an allegation of fraud to justify any amendment to his traverse. By Mr. Beattie: The allegation that we would make, if the court please, is that we didn't discover it within the 20 days, and that the defendant in garnishment, the stakeholder, is without interest to contest it, as he has to pay it to somebody. By the Court: Mr. Beattie, probably we had better let the case go over until next Friday, and you can file your amendment, and then we will see what objection Mr. Wall may have to your amendments. By Mr. Beattie: All right, sir."

The matter then went over to March 17, and, when called for hearing, counsel for plaintiffs informed the court that he had filed a supplemental traverse; whereupon counsel for respondent moved that the same be stricken out, and offered in evidence the sheriff's return, showing that plaintiffs were notified on March 23, 1914, of the filing of garnishee's answer. The court then ruled that the amended traverse should be allowed, and counsel for garnishee reserved a bill of exception (which was noted by the stenographer) to the denial of the motion to strike out.

Plaintiffs' counsel then repeated the question to which objection had been made, and counsel for garnishee again objected, as follows:

"I object to any evidence under the supplemental and amended traverse on the ground that the said traverse was filed after the expiration of the delay allowed by the statute of 1884, being Act 73 of the General Assembly of that year, which requires that the traverse be filed within 20 days from the notification of the answers of the garnishee, and therefore as to this particular fund it came entirely too late. By the Court: The objection is overruled. * * *

"(Colloquy between counsel.)

"It is agreed that the same objection, the same ruling, and the same bill of exception shall apply to all evidence taken under the supplemental and amended traverse."

### In the amended traverse it is alleged:

"That the answers of the garnishee wherein he states that there was any mortgage on the Peters avenue property at the time of the sale are false; that the mortgage for $6,000 to which the answers refer had been paid several months prior to the sale, and that the $6,000 of proceeds went into the hands of the garnishee as the property of the defendant "less only the legal charges for taxes and for commission on the sale, and that, after deducting any such proper charges, there still remain in his hands as the property of Charles J. Sinnott, and therefore subject to the seizure herein made by garnishment process, over $10,500; * * * that at the time said Saxon filed his answers * * * herein he knew the facts; * * * that his answers claiming to have in his possession for said Sinnott any amount less than that set forth in the last preceding paragraph are false; * * * and that the acceptance of the same as true by this court will operate as a fraud upon your appearers, and will fraudulently deprive them of their legal rights under the garnishment proceedings herein set forth. Appearers further aver that the said Charles J. Sinnott, to whom the money in the possession of the said Saxon belongs, does not sanction the aforesaid answers of the said Saxon, and does not object to your appearers being allowed, under the said garnishment process, a judgment for the proceeds of said sale, less only the legal costs of taxes, commissions, etc., incidental to said sale, and for which he was legally chargeable; * * * that they did not discover the falsity of the said answer * * * until within the last two or three months, and for that reason did not specifically aver them before this time. * * *"

A mass of evidence, oral and documentary, was then adduced, subject, as to the amount represented by the alleged $6,000, to the objection reserved on behalf of the garnishee, but without objection or exception in other respects; and it was admitted by the garnishee that the items of $400 and $48.25 were incorrectly charged against the remaining funds in his hands, that the alleged reason for his retention of the balance of $1,092 no longer existed, and hence that he now has in his hands, subject to the seizure, $1,540.30. Apart from the $6,000, therefore, the amount here in dispute is the $2,500 retained by the garnishee as a fee alleged to be due and to have been agreed on by the defendant in execution.

[1] 1. As to the $6,000 represented by the alleged mortgage, the position of the plaintiffs in garnishment seems to be: (1) That their claim in that respect was included in the original traverse of defendant's answers to interrogatories; (2) that, if it was not so included, defendant's objection to the amendment of the traverse was not sufficiently explicit or sufficiently reserved by reason of the failure of counsel to have a bill of exception drawn up, presented to the trial judge, and signed.

It is admitted that, when the original traverse was filed, plaintiffs' counsel had no reason to doubt that the mortgage in question was valid, and hence had no reason to attack it; and that they did not attack it is evidenced by the facts that in several instances their traverse expressly excepts it from the attack otherwise leveled at defendant's answers, and that, in the prayer of their rule, they ask that defendant be condemned to pay "the full amount of said proceeds of such sale, less the mortgage resting upon said property and deducted before the payment of the same into the hands of said Saxon." The amendment to the traverse in which it is alleged that the mortgage thus referred to had been extinguished by payment of the debt which it purported to secure prior to the sale of the property was filed nearly two years later, and it was then alleged that plaintiffs had made that discovery only within the two or three preceding months.

Their rights in the premises are governed by Act 73 of 1884, p. 96, which declares that—

"In all cases where the plaintiff, or seizing creditor, desires to disprove or traverse the answers propounded [sic] to a garnishee under a writ of attachment or fieri facias, he shall within 20 clear days after service of the notice of the filing of the answer by the garnishee has been made upon him as aforesaid, file a rule in court or institute other proceedings against the garnishee for the purpose aforesaid, and upon the failure of the plaintiff or seizing creditor to file a rule or institute other proceedings as aforesaid, any property, rights or credits in the hands of said garnishees shall, by the mere fact of said failure, be considered as released from seizure under said writ of attachment or of fieri facias, and no proceedings of any nature in said suit shall thereafter be allowed to subject such property, rights or credits in any manner to said writs, except after a new seizure and the service of new interrogations," etc.

Which provisions, as we think, are as conclusive with respect to property rights or credits expressly excluded from the judgment prayed for in a traverse filed within the delay so fixed as though no traverse were filed until after the expiration of the delay.

For the purposes of the question here presented, the statute quoted is the same as Act 27 of 1877 (Ex. Sess.), which it amends and re-enacts, and which has been applied as written in the following (and perhaps other) cases, to wit: Garcia y Leon v. Louisiana Mut. Ins. Co., 31 La. Ann. 546; David v. Rode, 35 La. Ann. 961.

The second ground relied on by plaintiffs is equally without merit. Act 102 of 1877 (Ex. Sess.) declares:

"That a party desiring to reserve a question relating to evidence or the charge of the judge to the jury may do so by requiring the reporter or clerk * * * to take down the same as presented and in the presence of opposing

counsels; and the judge shall cause his ruling to be likewise taken down at the time, all of which shall stand in lieu of a bill."

And defendant's objection to all evidence in support of the allegations of the amended traverse were so taken down, as was also the ruling of the judge.

[2, 3] 2. Whether an objection by the garnishee that his right to retain the $2,500 claimed by him as a fee due by the defendant in execution could not be attacked and determined in a garnishment proceeding would have been well made need not be decided, since the objection was not made. Florence v. York, 2 La. Ann. 995; Slatter v. Tiernan, 12 La. Ann. 376; Carter Bros. & Co. v. Galloway & Burns, 36 La. Ann. 732.

Whether defendant in execution owed the garnishee any fee, and, if so, the amount, are questions which we also leave undecided; it being shown satisfactorily that defendant left New Orleans and went to Alabama with the understanding that his property on Peters avenue should be sold for the benefit of his creditors, and that the proceeds should be held in trust and intact, to be turned over to them in an eventual settlement thereafter to be made, being entirely insufficient to satisfy the claims of the creditors, that they were delivered to and received by the garnishee subject to that condition, and that the garnishee was not released by defendant from his obligation so to account for them. Such is the positive testimony of the defendant in execution, supported by corroborating circumstances and evidence, as against which the testimony of the garnishee as to an oral agreement with defendant entered into on the day of the sale of the property stands alone, finding no support, as we think, in the correspondence, if it can be so called, which took place between defendant and the garnishee after this suit had been instituted in December, 1913, and consisted of two letters, written by the garnishee, the one addressed to defendant, and the other inclosed therein, to be signed by defendant, and so signed, addressed to the garnishee, and antedated as of the date of the sale; and a third, written by the garnishee to defendant in 1916, after the filing of the traverse herein.

It is therefore ordered and adjudged that the judgment appealed from be amended by reducing the principal amount of the award from $10,040.30 to $4,040.30, and, as so amended, affirmed; the defendant (garnishee) to pay all costs.