JAMES LANIER AND BENJAMIN C. WEST, APPELLANTS, *vs.* DANIEL McCABE, APPELLEE.

WHERE a note is given in the name of a firm by one of the partners for the private debt of such partner, and known to be so by the person taking the note, the other partners are not bound by such note unless they have been previously consulted and consent to the transaction.

In such case it lies upon the creditor to show that his debtor had authority so to give him the joint security of the firm.

Where several persons formed an association, for the purpose of establishing and putting in operation a steam saw mill, one of the parties cannot issue notes in the name of the company, which shall bind the other members of the company, except the authority be given by their articles of association or otherwise. The partnership must be in a trade or concern to which the issuing or transfer of bills is necessary or usual, otherwise a copartner will not be liable for the act of his partner, unless he gave express authority.

Where a note is made by one stockholder of such association as treasurer or agent of the company, payable to another stockholder, and the latter endorses it over to his creditor in payment of an individual debt, it is in effect the making of a note by two of the members of the company, but does not vary the rule which requires that a note so given should, to bind the other members, be given with the express authority of the other members. And where the plaintiff relies upon a subsequent acknowledgement of liability by defendant such acknowledgement must be explicit and express.

APPEAL from Gadsden Circuit Court.

Daniel McCabe, in 1844, filed his bill in Equity in the late Gadsden Superior Court, against James Lanier, Thomas Hodgson, and Benjamin C. West, alleging that James Lanier, in 1841, became indebted to complainant, and being unable to otherwise extinguish his debt to complainant, transferred in payment a note dated 31st March, 1841, payable on 1st January, 1842, to defendant Lanier for the sum of $258, with interest from date, and signed by C. Harris, who describes himself as treasurer of the Quincy Steam Saw Mill Company. That at the date of said note defendants Lanier, Hodgson, and West, together with Cervantes Harris (since deceased,) who signed the note, were members of and constituted, so far as complainant was informed, the "Quincy Steam Saw Mill Company." That the note was executed in good faith by Harris as agent of the company, and upon valuable consideration passing

from Lanier to *the said company*. That complainant had often demanded of the members of the company payment of the note, but that the same remains unpaid. The bill prays that defendants discover the names of the persons composing the company at the date of the note; whether Harris was not the agent of the company authorized to execute notes and contracts for the company; whether he was not in the habit of executing such notes with the knowledge of the company; whether similar notes or contracts had not been adopted by the company, and whether they ever repudiated his authority by public notice, and if so when; whether said Harris left the service of the company of his own accord, or whether he was dismissed for exceeding his authority by executing this or similar obligations; and if so, whether such acts constituted the only ground of dismissal; and whether it was so announced to said Harris or the public; and if to the public in what manner, and at what time. The bill also prays that the amount of the note and interest be decreed to constitute a debt against the Quincy Steam Saw Mill Company, and in default of payment thereof by the company, that it be decreed to constitute a joint and several debt against defendants as copartners, and concludes with a prayer for general relief, and for subpœnas, &c.

In November, 1844, West filed his answer, under oath, admitting that he is and was on 31 March, 1841, a member of the Quincy Steam Saw Mill Company, and that defendants Lanier and Hodgson, and Cervantes Harris (deceased,) were also members of said company. The answer states that he knows nothing of the consideration that passed from Lanier to the company for the note. That Cervantes Harris was employed by the company to stay at the saw mill and sell lumber and other articles, and to receive the money for the same, and to keep an account of the receipts and disbursements of the mill, but denies that Harris had authority to issue notes binding on the company. He denies having any knowledge that such was the practice of Harris until after the notes were signed and issued by Harris, and states that he immediately advised Harris that he was transcending his authority, to which Harris assented, and that he believes no other notes were afterwards issued.

West further states in his answer, that no public notice was given by the company relative to said notes, as the notes were all made to James Lanier, one of the partners, and not transferable by delivery or endorsement. That he never, to the best of his knowledge and belief, recognized any of the notes so issued; that Harris was not

dismissed on account of issuing the notes, as the notes were then in hands of Lanier, and considered as certificates merely that he had advanced such sums to the company.

He further states that prior to 1st January, 1841, he had advanced for the company in cash, $2177 10-100th which exceeded the advances made by any other member. That Harris died insolvent; that defendant Hodgson is also dead and that he died insolvent and greatly indebted to the company. That Lanier is insolvent and that he (West,) is the only responsible party.

He also states that since the 1st January, 1841, he has advanced $3215 62-100th in payment of debts and expenses of the company, and that there are outstanding demands against the company to a large amount say $3000. He states that James Lanier, his co-defendant, is still interested in the recovery of the note, and has procured complainant to file the bill, well knowing that himself (Lanier) was greatly in arrears to defendant.

He insists that complainant is entitled to no greater relief than Lanier would be, and offers to account with Lanier and every other member of the company.

In November, 1845, Lanier filed his answer under oath, which states that in 1839, an incorporated company was formed, for the purpose of establishing and putting into operation a Steam Saw Mill, in the County of Gadsden. The stock was limited to $5000, and divided into shares of $50 each. That divers citizens of Gadsden together with respondent became owners, and formed the company which has ever since been called the Quincy tseam saw mill company. That Hodgson, Harris, West and respondent were members of the company, on the 31 March, 1841, and for a long time afterwards; that at this period the company becoming embarrassed and some dissatisfaction existing among the members, it was determined to settle up the affairs of the company. That to that end Harris was authorized by the company, to collect the demands in favor of the company, to pay the debts, to audit and allow the claims against the company, and to give notes in behalf of the company for debts due by the company. That said Harris then became the active partner in the concern, and had the exclusive management of its affairs. That Harris in the settlement of the business, executed many notes similar to that held by complainant, and which so far as respondent knows and believes were always regarded by the members of the Company as binding upon them. That respondent held large demands

against the company (for the services of his wagons and teams, for hire of slaves, for money advanced and for goods sold,) beyond his share of the capital stock, which by agreement were submitted to Harris for allowance. That on 31 March, 1841, said company was found indebted to respondent about $4000, and that Harris executed and delivered to him sundry notes in liquidation of that sum, of which the note held by complainant is one. That a few months after the date of said note, and before the same was due, respondent transferred to complainant the note in question for valuable consideration. That Harris was authorized to sign the notes for the company, and no attempt to repudiate his authority, was made until after payments began to be demanded and suits to be instituted. That Harris was recognized as the active partner of the concern long after the notes were given, and until he voluntarily gave up the business. That no notice by the campany, or any member thereof, was given to the public, repudiating the notes signed by Harris.

The death of the other defendant *Hodgson*, is not suggested by complainant but is stated in the answer of defendant West.

At the fall term 1845, the complainant filed a general replication to the answers of West and Lanier, and at the November term, 1847, the cause was tried upon the bill and answers, before DOUGLAS, Chief Justice, who pronounced the following decree :

" This cause came on to be heard upon the bill and answers, and was fully argued by counsel, whereupon it is ordered, adjudged and decreed that the complainant do recover of the defendants the sum of three hundred and ninety-two dollars for principal and interest of the demand sued on ; and it is further ordered, adjudged and decreed that the complainant do recover of the defendants his costs in this behalf expended and that he have execution for the same."

To reverse this decree the defendants now prosecute their appeal before this Court..

*Carmack*, for Appellants.

*Dupont*, for Appellee, contended :

I. That Cervantes Harris, who signed the note on behalf of the company, had authority so to do.

1st. Harris had the authority as an agent, *impliedly* and by *ratification*. It is a doctrine so fully recognized as to require the citation of no authority to support it, that whatever legal act a man does

by another binds him as firmly as if performed by himself. It is also an admitted doctrine, that an *implied* authority in the agent is as binding upon the principal as if *expressed ;* and that this *implication* may be gathered either from the relation of the parties, or from subsequent *ratification,* or even tacit *acquiescence* in the acts of the agent. Now, if we apply these principles to the case under consideration, it will be perceived that the authority of Harris as 'agent,' to sign the note sued upon, is amply establishsd. It is true, that West, one of the defendants, denies that any express authority was ever given to Harris to sign notes on behalf of the company : it is true also, that the same defendant in his answer, *pretends* to deny that the act of the agent was known to the company, but the pretended denial is couched in such equivocal and contradictory terms as to amount to a full admission of the knowledge of the fact. The answer of this defendant does not fully negative the allegation in the bill—the allegation is, that the fact of signing by Harris, was known to the company—the answer is, that it was not known to this individual partner, and is a tacit admission of the allegation as it is set forth, and if this knowledge is brought home to any one member of the firm, and not *repudiated,* it will bind the company. But again, the answer even as to his individual and personal knowledge is so *equivocal* and contradictory, as to amount to a full admission of the allegation, for he only 'denies having any knowledge that such was the practice of said Harris, *until* after said notes were signed and issued by said Harris.'' Now it is very evident that he could have had no knowledge of the existence of the fact, *before* it had actually occurred, and the tacit admission that he knew it *after* it had occurred, and that he did not repudiate it, is a full admission of the allegation in the bill. The law upon this branch of the case is well established— it is laid down in the books as a salutary rule in relation to agencies, "That when the principal has been informed of what has been done, he must dissent and *give notice* in a reasonable time, or his assent will be presumed.'' Hammond's Prin. and Agent, 232. 12 John. Rep., 300, Cairnes and Lord *vs.* Bleeker. 2 Kent. Comm. 615–16. 1 John. Cases, 110. Paley on Agency, 74. 2 Term Rep. 189 and notes.

But if the facts of the case do not establish an authority to sign the note as an agent on behalf of the company, then we assume,

2nd. That his authority to bind the company was ample as a *copartner.* The fact that Harris was a copartner at the time that he

executed the note, is fully admitted by the answers of both West and Lanier. The law upon this subject is well established, "that one partner has an implied authority to bind the firm by contracts relating to the partnership, whether such contracts be evidenced by bare agreements, oral or written, or by negotiable securities as bills of exchange and promissory notes." Collier on Partnership, 212.— Ibid 220.

If it be objected that the note given by Harris did not "relate to the partnership;" then we contend that this is admitted in the answer of West, who says that "the note was considered as a mere *certificate* that said Lanier had advanced the sum therein mentioned," and consequently is not obnoxious to the anticipated objection.— Again, if it is objected upon this branch of the case, that McCabe, the assignee of the note, or alleged "certificate," is bound by the *notice* which Lanier, the assignor, must have possessed relative to the character and consideration of the note, then we invoke the principle of equity, that "where one of two innocent persons is to suffer that party shall suffer who by his own act and conduct has enabled the other to be imposed upon." Story on Agency, p. 56, Sect. 56. Paley on Agency, p. 201. 2 Barn. and Ald. p. 143, Baring *vs.* Corrie.

And consequently if it was the understanding of the company that a security which had been signed upon their behalf, purporting to be and possessing all the essential qualities of a "promissory note," should stand only in the character of a "mere certificate," it was their duty to have given public notice of this understanding; and upon failing to do so, the loss, if any, must be borne by the company, and McCabe be viewed in the light of an innocent holder *without notice*, and entitled to all the privileges of the same. . But again, the limitation of the general authority of a partner, that the securities made by him on behalf of the firm, must relate to "transactions growing out of the partnership business," is to be taken with this qualification, 'that the holder of the paper has taken it with full knowledge that it *does not* relate to the business of the firm,' otherwise the firm will be responsible whether the security so taken relate to the partnership or not. 14 Wend. Reps. 133–140. 15 Wend. Reps. 364–66, Catskill Bank *vs.* Stall.

This doctrine results from the *implied authority* growing out of the relation of the parties as copartners.

II. The second objection made in the Court below to a recovery

James Lanier and Benjamin C. West, Appellants, vs. D. McCabe, Appellee.

upon this note against the company was that "it is the individual note of Cervantes Harris."

In reply we allege, that the law establishes no particular mode of signing, and if it be apparent that the note is signed with the *intention* of binding the firm, it is sufficient. For examples of signing Vide Collier on Partnership, 228 and 228, (a.)

III. The third objection taken at the hearing was "that the paper sued upon is not a valid '*promissory note,*' not containing any words of negotiability."

In reply we state the law to be that "it is not essential to the validity of a bill or note as an instrument, that it should contain any words of negotiability." Vide Chitty on bills, 180.

. IV. The fourth objection was, "that the assignee of the note took it from Lanier, the assignor, subject to all the 'equities' existing at the date of the assignment between Lanier and his copartners of the Quincy Steam Saw Mill Company." These " equities" are alleged to be the obligation of Lanier as a copartner to contribute to the settlement of the partnership debts. Now we contend that according to the *proofs* in the case, there are no partnership debts to be settled, and in order to determine this point it will be necessary to look into the *pleadings and proofs,* as presented by the Record. It will be remarked by the Court that there was a *general replication* filed to the separate answers of Lanier and West, which put the cause completely at issue, under the 66th rule, dispensing with a "rejoinder," or subpœna to rejoin, required by the English practice, and that without further *proofs* than what are furnished by the allegations and admissions contained in the bill and answers, respectively, the cause was brought to a hearing and argued accordingly. To the bill and answers *alone* therefore must we look for the proofs.

It is true that West, one of the defendants below, set forth in his answer, a large indebtedness due by the company ; but this matter is alleged as a *substantive* matter of defence, or by way of *avoidance*, and is not *responsive* to any allegation contained in the bill, and in order to have made it available to *him* as a defence, it ought to have been supported by positive or *independent testimony.* This has not been done, and therefore so much of his answer as relates to the alleged indebtedness, must be rejected in the consideration of the case, *as not amounting to any evidence.* Vide Story's Eq. Sec. 1528–9. 2 John. Ch. Rep., 88–90, and note (a.) 7 Vesey, 587. 1 Wash. Rep., 224, Beckworth vs. Butler. 1 Munford

Rep., 373, Paynes vs. Coles.   2 Caines Cases in Error 66, Bush vs. Livingston, et al.   1 John. Rep., 580, Greene vs. Hart.

V.  The fifth objection made in the Court below to a recovery in this suit was, "that the complainant had his remedy in a Court of law."

The English doctrine upon this point is too well understood by the Court, to require any citation of authority to sustain it, to wit: "that the assignee of a bond or other security not containing any words of negotiability, cannot sustain an action upon it *in his own name in a Court of law* but has the *alternative* of either suing in a Court of law, *in the name of the assignor*, or original obligee, or of resorting to a Court of equity;" and in accordance with this doctrine have been the decisions in the State Courts.   Vide 11 Ohio Reports 21, Townsend vs. Carpenter.

Such was the law in this State until the passage of the Judiciary act of 1828; the 34th section of which was evidently intended to operate only as a cumulative or *enlarging* statute, and not to *restrain* or otherwise limit or deprive the Courts of equity of their original jurisdiction in matters of this kind.   Upon the construction of statutes, Blackstone lays down the doctrine by way of illustration, that, "if by a former law an offence be indictable at the quarter sessions, and a latter law makes the same offence indictable at the assizes; here the jurisdiction of the sessions is not taken away, but both have a concurrent jurisdiction, and the offender may be prosecuted at either, unless the new statute subjoins express *negative* words, as that the offence shall be indictable at the assizes, and not elsewhere." Vide 1 Black. Com. p. 90, (marginal.)

A case in point is found in our Statute book, where a special statute gives to a mortgagee the right to foreclose his mortgage in the Courts of Common law, and yet it has never been contended or even conceived by any one, that the ordinary or original jurisdiction of the Courts of equity in cases of "*foreclosure*," is in the slightest degree *restrained* or *limited* by the operation of this statute.

The case of 'Williams vs. Judge' lately decided in the Supreme Court of the U. S. was cited in the Court below, to support the point above relied upon; but it is a sufficient answer to that authority to remind the Court that, that case *only* decides, that under the 34th section of the statute above referred to, a bond made by an individual and others, payable to himself, *may* be sued upon in the name of the assignee, *in a Court of law;* but does not in the remotest manner

intimate the opinion that a suit in chancery might not also be maintained.

· VI. A sixth objection was made by the appellants in the Court below, to wit: " that the answer of Lanier (which fully admits all the material allegations of the bill) was no evidence against his co-defendants."

It is admitted as a *general rule* of evidence in Courts of equity " that the answer of one defendant cannot be read against his co-defendant;" but to this general rule there are exceptions, and one of the exceptions is when the co-defendant is also a copartner.— Vide Gresley's Eq. Ev., 25: citing 1 Taunt. 104, Wood *vs.* Braddick. 1 Russ. and Mylne, 191, Prichard *vs.* Draper. 8 Mod. 180, Hilliard *vs.* Phaley.

This point of objection is here referred to, not so much for the purpose of invoking the aid of Lanier's answer, as to set forth the doctrine with its proper limitations.

BALTZELL, Justice, delivered the following:

This is a suit in Chancery to recover upon a note purporting to be executed by Cervantes Harris as Treasurer of the Quincy Steam Saw Mill Company.   The authority of Harris being denied an effort is made to sustain it by the position that he was also a member of the Company and as such had a right to execute notes in the name of the firm—and secondly, that West the party charged as another member of the firm acquiesced in the notes executed, and neither repudiated nor rejected them.   Conceding that Harris signed the note as a member of the firm the question arises as to its obligation upon the other members and particularly upon West, regarded now as the•only responsible party.   If the Company had been indebted to McCabe, for articles purchased of him which were necessary for the concern and in their usual line of business we presume there would be no difficulty.   But McCabe had no claim against the Company. His claim was against Lanier for a debt unconnected with the Company and he took this note by the statement in the bill "believing Lanier to be in failing circumstances and unable to make any better arrangement for the payment of the debt."   It is too well settled to be now disputed that "where a note is given in the name of the firm by one of the partners for the private debt of such partner and known to be so by the person taking the note, the other partners are not bound by such note unless they have been previously consulted and

consent to the transaction." 16 John., 38. 2 Caines, 246. 2 John., 300. 4 Ibid., 251. 1 Wend., 531. Chitty on Bills, 47.

In such case it lies upon the creditor to show that his debtor had authority so to give him the joint security of the firm : *prima facie* the transaction is fraudulent on the part of both debtor and creditor. Bailey on Bills, 57. Green *vs.* Weakin, 2 Stark. 307. Williams *vs.* Walbridge, 3 Wend., 415.

We have considered the case most favorably to McCabe by treating this as a ·partnership concern having the right to issue bills, but are satisfied that no such authority exists as to this company except it be given by their articles of association or otherwise. The partnership must be in a trade or concern to which the issuing or transfer of bills is necessary or usual ; for otherwise a copartner will not be liable for the act of his partner unless he gave express authority. Therefore a director or shareholder in a mining or gas light company, or a partner in a farm, is not liable like a partner in trade for every bill issued without his authority. Chitty on Bills 39–46. Dickinson *vs.* Valpy, 10 B. &. C. 128. 5 M. &. R., 126. 4 John. 267.

Nor do we consider that there was a subsequent approbation, acknowledgement, or admission as made out in the bill and answer to fix the liability of West. There must be an acknowledgement to the plaintiff or some prior holder of the bill and it must be explicit and express. Chitty 46. So far we have treated the note as signed by Harris without reference to the endorsement by Lanier. This does not in our opinion alter the case. There was a *signing* by one stockholder and an endorsement by another of a note passed by the latter for his individual use. This is in effect but the making of a note by two of the members of the Company in a form different from an ordinary note signed by the two, but does not vary the rule which requires that a note so given should be with the consent of those sought to be charged and if not it imposes no obligation upon them. Instances have been cited of a recovery upon bills and notes issued by a firm and passed by an individual member in good faith for his own use. This may well be where a company indebted, by the consent of all the members give a note or bill. Sometimes a recovery has been had on a bill or note of this kind fraudulently put in circulation but being in the hands of a *bona fide* holder. But there is nothing of the kind here either by proof or the admission of the parties, indeed the very contrary appears. McCabe however as

assignee of Lanier stands in his place to the extent of the note with the Company if any thing shall be due to him on a settlement of their affairs and if he thinks proper his bill may be continued for an account and settlement with that view. If this however be unnecessary by the state of their affairs and is declined, then the bill of complaint should be dismissed.

It is therefore decreed and ordered that the decree of the Circuit Court be and the same is hereby reversed and set aside as to West and the cause remanded to that Court with directions to allow the complainant, if he chooses, to have an account and settlement of the affairs of that Steam Saw Mill Company or to amend his bill to allege express ratification by West and for other proceedings consistent with equity, and if not, that his bill be dismissed with costs as to West.