# CHARLESTON.

D. E. LUTZ *v.* JOHN Z. MILLER *et als.*

(No. 5492)

Submitted May 19, 1926.  Decided June 1, 1926.

(Rehearing Denied· November 12, 1926.)

1. PARTNERSHIP—*If Notice That Partner Has Retired From Firm is Not Given to Those Who Have Been Dealing With Firm, He is Generally Treated As Member of Firm.*

   When a partner retires from a firm, it is his duty to see that notice of such retirement is given to those who have been dealing with the firm. If no such notice be given, the retiring partner is generally treated at law as still a member of the firm and is liable as such (p. 25.)

   (Partnership, 30 Cyc. p. 670.)

2. SAME—*One Who Knows That He is Being Held Out As Partner and Fails to Notify People Dealing With Firm to Contrary May be Held Liable as Partner to Those Extending Credit to Firm on Faith of His Reputed Relation Thereto.*

   One who knows he is being held out as a member of a partnership and takes no adequate steps to notify those dealing with the firm to the contrary, may be held liable as a partner to those who extended credit to the firm on the faith of his reputed relation to it. ˙ (p. 27.)

   (Partnership, 30 Cyc. p. 677.)

3. SAME—

   A partner cannot repay himself out of the firm's assets, for advances made the partnership, except with the assent of his co-partners, express or implied, and not then until the general creditors are paid. (p. 29.)

   (Partnership, 30 Cyc. p. 542.)

4. SAME—*Where Partner Who Made Advances to Firm Signed Firm Name to Note Payable to Himself, Which he Indorsed*

*and Which Was Knowingly Accepted by His Creditor in Payment of His Personal Debt, Creditor Cannot Recover of Partnership Without Proof of Assent, Adoption. or Ratification by Copartners.*

Where a partner, who has made advances to his firm, signs the firm name to a note payable to himself, which he endorses and which is knowingly accepted by a creditor of the partner in payment of the partner's personal debt, the creditor cannot recover of the partnership without proof of assent, adoption or ratification by the copartners. (p. 30.)

(Partnership, 30 Cyc. p. 511.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Randolph County.

Suit by D. E. Lutz against John Z. Miller and others for an injunction. From an adverse decree, plaintiff appeals.

*Affirmed in part; reversed in part.*

*Spears & Irons,* for appellant.

*D. H. Hill Arnold* and *E. L. Maxwell,* for appellees.

HATCHER, JUDGE:

In the fall of 1919, D. E. Lutz, J. Z. Miller, and R. M. Kittle formed a partnership to manufacture and sell lumber, on Beaver Creek, Randolph County, West Virginia. In 1920 a lease of the Hart Coal Mine, which was near the lumber operation, was executed to these three parties as lessees. The lumber operation was conducted until the fall of 1921. The coal mine was operated until the fall of 1923. Pending these operations Miller individually conducted a store at which the employees of the operations ran accounts. In Dec. 1923, Miller having become ill, Lutz had a receiver appointed for the mine. A number of suits were instituted against the partnership by employees for unpaid wages. A suit was also brought against it by the Valley Grocery Company demanding payment of five notes bearing the firm signature.

The present suit was brought by Lutz in the Circuit Court of the said county, in which he united as defendants the said employees, the Valley Grocery Company, Miller and Kittle.

Lutz' bill alleges that he was a member of the partnership during the first three months of its operation only; that he is not responsible for the claims now urged against it; and asks for injunctive relief, etc.

The employees and the Valley Grocery Company filed several answers controverting the allegations of the bill and asking for affirmative relief. Depositions were taken. Upon the pleadings and the proof the lower court decreed (1) The partnership pertaining to the Beaver Creek operation has never been legally dissolved, and Lutz is liable for its debts, (2) Lutz permitted himself to be held out as a partner in the Hart Coal Mine operation, and is estopped *in pais* to deny his liability to its creditors, (3) the several accounts in Miller's store of the employees should be set-offs to their claims against the partnership, (4) The five notes held by the Valley Grocery Company were for an indebtedness of the partnership to Miller, were valid notes, were acquired by the Grocery Company in due course of trade, and the Grocery Company is entitled to recover from Lutz as a member of the partnership the full amount of the notes and interest.

From this decree Lutz appealed, charging error to the Circuit Court in holding that (1) The Beaver Creek partnership had not been dissolved and Lutz is liable for its indebtedness, (2) Lutz is estopped from denying liability for the indebtedness of the Hart Coal Mine, and (3) Lutz is liable for the notes held by the Valley Grocery Company.

(1). Lutz testified regarding the Beaver Creek operation, that about September 1920, he agreed with Miller to withdraw from the partnership and had no further connection with it after that time; that he had never authorized Miller to issue checks, notes, etc., for the firm; that he did not know he was being connected with the partnership in any way after his withdrawal; and that he did not publish or give notice in any way of his withdrawal. Miller testified that he did not recall any agreement with Lutz for the latter to withdraw from the firm, and that he would remember if there had been any; that he often discussed the partnership business with Lutz until the time the operation was finished;

that he opened an account in the name of "Lutz, Miller and Kittle, Lumber and Coal," in the First National Bank of Belington, West Virginia, on Feb. 18, 1920, which continued until the institution of the present suit; that he often paid Beaver Creek employees with checks printed with the firm name; and that he always gave such notes, checks, etc., as the business demanded. It was general information in the neighborhood that the Beaver Creek operation was conducted by the firm. Employees testified that they were paid with the firm checks and had seen Workmans Compensation notices signed in the firm name, and understood that the firm operated the mill. One employee testified that he applied to Lutz for a job at the mill, and Lutz told him to "go up over the hill, we have another job over there." So widespread was the reputation of partnership that the attorney for Lutz alleged, without consulting Lutz, the partnership both as to the lumber and the mine operations, in the suit of 1923 for a receiver.

It appears that Lutz gave no such notice of his retirement from the Beaver Creek partnership as the law requires. 30 Cyc. p. 670, par. c; 20 R.C.L. p. 963, par. 190, p. 965, par. 193; Parsons On Partnership, par. 315; A. & E. Ency. of Law, Vol. 22, (2 Ed.), p. 179, par. d, p. 180, par. bb. He is therefore liable for all valid claims against it. 30 Cyc. p. 677, par. 7; 20 R.C.L., p. 966, par. 194; Caspersz On Estoppel, p. 113, par. 107; A. & E. Ency. of Law, Vol 22, p. 176-7, pars. 1 and 2. We therefore affirm the finding of the lower court that there has been no legal dissolution of the Beaver Creek partnership, and that Lutz is liable for its debts.

(2. Both Miller and Lutz testified that Lutz was not a partner in the Hart Coal Mine operation and that Lutz had signed the lease thereto merely as surety. The signature of Lutz to the lease was made above those of Miller and Kittle, and in the body of the lease there appears "and D. E. Lutz, John Z. Miller and Ralph M. Kittle, of Randolph County, West Virginia, parties of the second part, Lessees." The firm name was signed to Workmen's Compensation notices posted at the mine and to posters and newspaper advertisments.

Later they appeared signed by Kittle or Miller only. Contracts and invoices for sale of coal were signed by the firm. Some twelve suits were prosecuted against the firm in regard to matters relating to the mine, and one suit was instituted in the name of the firm to recover for coal sold. Some of the employees were paid with the firm checks. Lutz attempted to obtain a certain right of way from the mine, saying, according to one witness, "he wanted to get the road so they could get out more coal." It was general reputation, according to the evidence of employees of the firm and others, that the Hart Mine was run by the partnership. Lutz testified that when the Compensation notices and the posters and advertisements appeared in the firm name, he protested to Miller, who changed them; that he never published any counter notices; that whatever was done in the firm name in the matters of the bank account, the checks, suits for and against the firm, the selling of coal, and the giving of notes, etc., was done by Miller on his own initiative without Lutz' knowledge or consent, (in which statements Miller supports him); that he did not know he was being connected with the partnership by anyone until the institution of the present litigation; that the suit for a receiver was instituted by him to protect himself as surety, and the allegations of partnership made therein were made by his attorney without his knowledge; that his attempt to obtain the right of way for the mine was due to the fact that he already had some rails and a section of railroad on his own property from which he was asked to put an extension to the mine.

The evidence indicates that Lutz was not a partner in fact in the Hart Coal Mine operation. However he knew, by his own admission, that he was named on the Workmen's Compensation notices, the posters, and the advertisements, as a partner. A private protest to Miller and a subsequent knowledge that the advertisements had been changed was not enough to assure him that the public had notice that he was not a partner. "If a person learns that his name is being used as that of a member of a firm, he is under a duty to prohibit such use, and it is the general rule that when one

knows that he is held out as a partner in a particular business, he is bound to take such steps as an ordinarily prudent person would take in the circumstances to notify the public, as well as individuals to whom he knows the holding out has been given, that he is not a partner.'' 30 Cyc. p. 393, par. c.

It may be that Lutz was unaware of the fact that he continued to be held out as a partner. But his notoriety as a partner was such, and the occurences so numerous, by which he should have known that he was so considered, that ignorance thereof can be based only on negligence and indifference to public duty. Ignorance arising from such culpable neglect will not prevent an equitable estoppel, 21 C.J. p. 1126, par. 129b; p. 1169, par. 175; Herman on Estoppel, pars. 759 and 788; Pomeroy Eq. Juris. 3 Ed., par 809; *Atkinson* v. *Plum,* 50 W. Va. 104; *Moore* v. *Harper,* 42 W. Va. 39; *Brant* v. *Coal Co.,* 93 U. S. 927.

We cannot say under these circumstances that the Circuit Court erred in finding that Lutz permitted himself to be held out as a partner in the Hart Coal operation.

It is one of the essential elements of equitable estoppel that the party asserting it must have been influenced by and acted upon the conduct of the party sought to be estopped. Counsel for plaintiff contend that even if Lutz permitted himself to be held out as a partner, he is not estopped to deny liability for the claims of the employees, for the reason that there is no proof that any of them were induced to credit the firm because they considered Lutz to be a partner. The evidence does not support this contention as to all of the claimants. Rembert Yokum testified that he believed Lutz to be a partner in the Hart Coal Mine before he extended the credit which he is claiming, and in reply to a question as to whether he expected to collect from Lutz on credit slips in Miller's name, replied: ''I expected to collect off him in case Miller failed, as my understanding was that it was a partnership.'' Howard Hart, on being asked if he would have extended credit and entered into the employment of the company if he had known Lutz was not a partner, replied: ''Well, I would not—that is all. It was my under-

standing that there was a company of them." As to the other claimants, in the answer of George Gibbons et al, the following allegation appears: "D. E. Lutz, the defendants John Z. Miller, and Ralph Kittle, by their conduct, conversations, admissions and acts held themselves out to all the world as being partners and by reason of said conduct, conversations, admissions and acts of said D. E. Lutz, John Z. Miller, and Ralph Kittle, these respondents were introduced to extend credit to them as partners trading as Lutz, Miller and Kittle." There was no replication filed to this answer. Therefore no proof of this allegation was necessary. Ch. 125, Sec. 36, Code.

We therefore affirm the ruling of the Circuit Court as to the responsibility of Lutz to the defendant employees.

(3). The Valley Grocery Company acquired the notes, upon which it seeks to recover, in 1921, at a time when Miller was personally indebted to it for groceries sold to his store. The company was demanding a settlement. Miller explained to a representative of the company that the partnership owed him for advances made through his store to the partnership's employees, and that if the company could "handle our notes," he would settle that way. He then drew the notes in question in the firm name, payable to himself, endorsed and delivered them to the company, which accepted them in payment of his account. *Bank* v. *Lowry* 81 W. Va. 578, relied on by counsel for the Valley Grocery Company, has no application to these facts. In that case the partnership was held responsible for an unauthorized note issued in the firm name by a partner, where it appeared that the partner had implied authority to execute commercial paper on behalf of the partnership, and the bank had no notice that the partner was appropriating the proceeds of the note to his own use. In this case Miller proves no authority implied or otherwise from Lutz to pay his own claims against the partnership, and the company had full knowledge that Miller was attempting to pay his personal debt with the partnership notes. It is settled law that a partner cannot repay himself out of the firm's assets, for advances made to the partnership by him, except with the assent of his co-partners, express or implied,

and not then to the prejudice of the firm's creditors. His demands must await the payment of the firm notes. After the general creditors are satisfied, he is entitled to be paid out of the assets remaining. If the assets be insufficient, he may require contribution from his co-partners. 22 Ency. Law, 195-6; 30 Cyc. 542; Rawley Modern Law Partnership, par. 537; Story on Partnership, par. 97; *In re Reiser* (N. Y.), 19 Hun. 202; *Johnson* v. *Ames* (Mass.), 11 Pick., 173; *Simrall* v. *O'Brannon* 46 Ky. (7 B. Monroe) 608; *Edison Co.* v. *Mott*, 51 N. J. Eq. 16; *In re Erwin* 109 Fed. 135; *White Cloud Co.* v. *Thompson* (Mo.) 175 S. W. 897. The reason for this rule is obvious. Without it the partners could obtain satisfaction of their individual claims against the firm to the prejudice of the general creditors, and the managing partner could prefer his debts to those of his co-partners. In 1804 the Supreme Court of New York declared: "When anyone therefore, takes a partnership note, from one of the company, for what he knows to be his particular debt, without consulting or apprising the other members of his intention, or obtaining their consent, there is no hardship in confining his remedy to the one whose debt it was." See opinion in *Livingston* v. *Hastie,* 2 Caines 246 (248). This ruling soon met with general approval throughout the states. Cases closely following the N. Y. court are *Chazournes* v. *Edwards* (Mass.) 3 Pick. 5; *Taylor* v. *Hillyer,* 3 Black. 433, (Ind.) 26 Am. Dec. 430; *Lanier* v. *McCabe* 2 Fla. 32; *Tompkins* v. *Woodyard* 5 W. Va. 216. In the opinion in the case last cited this court held: "It is the well settled doctrine of the American courts, that a third party taking from a partner the signature of his firm upon his own private, individual transaction, cannot hold the firm without proof of authority, adoption or ratification." Parsons differentiates the English rule and recognizes the doctrine above stated as the adjudication of the American courts. Parson on Partnership, 4 Ed., par. 134; Story on Partnership, pars. 132 and 133; Rawley Mod. Law Partnership, par. 435; 30 Cyc. 510-11; Daniel on Neg. Inst., 6 Ed. par. 366. For other decisions illustrating the unyielding rigor of this rule, see *Johnson* v. *Crichton* 56 Md. 108; *Farwell* v. *Co.* 45 Minn. 495; *Carter* v. *Galloway* 36 La. Ann. 730;

*Cannon* v. *Lindsey* 85 Ala. 198; *Davies* v. *Atkinson* 124 Ill. 474; *Rogers* v. *Batchelor,* 12 Peters 221. There is no proof either of authority from Lutz to issue these notes or of his adoption or ratification thereof. It was therefore error for the Circuit Court to decree that Lutz is liable for the full amount of said notes and interest, and in so far as the decree so holds it is set aside and reversed.

While these notes are not valid, as such, against the partnership, yet by reason of the circumstances under which they were given and accepted, they may be treated now as equitable assignments, *pro tanto,* of Miller's claim against the partnership. If its assets are insufficient to meet its debts, and upon a settlement of its affairs, there should be found a contribution due Miller therein from Lutz, then the Valley Grocery Company would be entitled to press its demands against such contribution. "A note in the name of the firm to one of the partners, is a writing somewhat anomalous in its character, it creates but an imperfect legal obligation, it is not enforcible at law according to its import, but if enforced at all, has to be regarded for that purpose, as imposing a separate legal liability on one of the partners. It is, in effect, merely the evidence of one item of indebtedness in the account between the partners; its availability in equity depending upon the condition of the firm, and relative interests and liabilities of the partners as such. If assigned away the assignee takes it with all its imperfections and drawbacks, legal and equitable. And as the partner himself, had he still ·retained the note, could only enforce payment of its full amount from the firm, in the event that the firm effects were sufficient to discharge it, as well as all other demands against it, his assignees are in no better condition and their right to have the full amount of their demand made out of the other partner who has had the control and management of the partnership concerns, depends on the same contingency. The assignor, as one of the partners, is no doubt responsible to the assignees for the full amount of the consideration of the assignment, but the effort in this case by the assignees, is to hold the other member of the firm, (there being only two

partners,) individually responsible for the whole· demand. To render him so liable, it should appear on a settlement of the partnership transactions and dealings, that he is indebted to his partner, the assignor, in that amount." *Simralls* v. *O'Bannon supra,* 610.

Except as to its finding in favor of the Valley Grocery Company, the decree of the Circuit Court will be affirmed.

*Affirmed in part; reversed in part.*