## MILLER v. WHITE et al.

### No. 8547.

Court of Civil Appeals of Texas. Austin.

Dec. 31, 1937.

Rehearing Denied Jan. 19, 1938.

Luther Lynn, Harris & Harris, and M. E. Sedberry, all of San Angelo, for appellant.

Newman & McCollum, of Brady, and Carl Runge, of Mason, for appellees.

BLAIR, Justice.

On September 6, 1935, appellant, N. Miller, sued G. R. White and Mrs. Irene Tom, as executrix of the estate of her deceased husband, G. W. Tom, in the district court of McCulloch county, Tex., upon a $2,500 note signed by G. R. White and G. W. Tom, and payable to the order of appellant, at Brady, McCulloch county, Tex. On September 12, 1935, appellee G. R. White filed his answer and cross-action, wherein he admitted that the $2,500 was a valid obligation of a partnership composed of himself and G. W. Tom. He further alleged that appellant, Miller, held certain other notes, one for $3,000, one for $1,800, one for $1,000, one for $830, and one for $700, payable to appellant in Martin county, Tex., which were ostensibly the obligations of the partnership of White & Tom, but which were executed through the fraud and collusion of G. W. Tom and appellant, Miller, and were the individual obligations of G. W. Tom. Appellee White further alleged that he was the surviving member of the partnership and had the authority to wind up its affairs, and prayed that said notes be canceled as to the partnership and as to himself individually. Mrs. Tom, sued as executrix, did not join in the cross-action to cancel the notes. On October 18, 1935, appellant, N. Miller, brought suit in the district court of Martin county, Tex., against Mrs. Irene Tom as executrix of the estate of her deceased husband, G. W. Tom, and against G. R. White, J. E. White, and C. P. White, as surviving members of the partnership of White & Tom, upon the several notes sought to be canceled by the cross-action of G. R. White in the case pending in the district court of McCulloch county, Tex. On February 1, 1936, appellee G. R. White filed his first amended original answer and cross-action under permission of the court in the instant case, wherein he again alleged that he was the surviving member of the partnership of White & Tom, and had authority to wind up the affairs of said partnership; and again prayed for the cancellation of all of the notes other than the $2,500 sued upon by Miller, which was again admitted to be a valid obligation of the partnership of White & Tom. To this answer and cross-action the appellant, Miller, filed his plea in abatement, setting up the suit filed by him in Martin county, and in which he joined all of the members of the partnership of White & Tom. This plea in abatement was overruled, and a trial on the merits resulted in judgment for appellant, Miller, on the $2,500 note, and judgment for appellee G. R. White, individually, and for the partnership of White & Tom, canceling the several notes set up in the answer and cross-action of White.

Appellant contends that the district court of McCulloch county acquired no jurisdiction of the cross-action to cancel the several notes described—his proposition presenting the question reading as follows: "Plaintiff, N. Miller, having brought this suit on a $2,500.00 note, signed by G. R. White and G. W. Tom, in their individual capacity, and G. R. White having filed an original answer and cross-action herein, alleging that the said G. R. White and G. W. Tom had been operating a partnership under the name of White & Tom, and that the said G. W. Tom was dead and that the said G. R. White was a surviving partner of said firm, and in behalf of said firm made allegations and prayed for the cancellation of five different notes signed by White & Tom in favor of the plaintiff; and subsequently plaintiff, having brought suit upon said five notes in the District Court of Martin County, Texas, against the Executor of G. W. Tom, deceased, G. R. White, J. E. White and C. T. White as surviving partners of a partnership alleged by plaintiff in said Martin County suit to have composed the partnership of White & Tom which executed said notes therein sued on, which suit was still pending and undisposed of and in

which answer had been filed by said G. R. White, J. E. White and C. T. White: The pendency of said suit in said Martin County gave the Martin County District Court jurisdiction of said suit on said notes as against the said J. E. White and C. T. White as surviving partners of White & Tom as against a subsequently amended answer and cross-action herein, filed by G. R. White to cancel said notes on behalf of said surviving partners, J. E. White and C. T. White, and the plea in abatement of the plaintiff in this suit to such subsequent amended cross-action showing said facts should have been sustained by the District Court in this suit as to the said J. E. White and C. T. White."

We do not sustain this proposition. The jurisdiction of the district court of McCulloch county of the cause of action to cancel the several notes attached on September 12, 1935, which was prior to the date appellant filed his suit upon such notes in the district court of Martin county, on October 18, 1935. The cause of action asserted by the cross-action in the McCulloch county court was for cancellation of the notes described. The cause of action filed in the later suit in Martin county was upon such notes. The district court of McCulloch county had potential jurisdiction to cancel the notes, and the rule of law is settled that, where a court of competent jurisdiction acquires jurisdiction of the subject-matter as a whole and such court has all necessary parties before it, or has the power to bring them before it, it has the prior right to exercise active jurisdiction of such case, and no other court in this state in which suit is subsequently filed has the right to interfere. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063; Conn v. Campbell, 119 Tex. 82, 24 S.W.2d 813; Anderson Co. v. Young, Tex.Sup., 101 S.W.2d 798; Haney v. Temple Trust Co., Tex.Civ.App., 55 S.W.2d 895; Eastland County v. Davison, Tex. Com.App., 13 S.W.2d 673; 11 Tex.Jur., 787.

Nor did the trial court commit reversible error in overruling appellant's exception to that part of the amended answer and cross-action which alleged that G. R. White was the surviving member of the partnership of White & Tom, and had authority to wind up the affairs of the partnership. The partnership of White & Tom was first composed of appellee G. R. White and G. W. Tom. It was organized for the purpose of conducting a cattle business, upon borrowed capital, which exceeded $200,000. G. R. White was the financial agent of the firm and G. W. Tom attended to the handling of the cattle, leases, and other expenses. J. E. and C. T. White later became dormant members of the firm. Appellant testified that he made the loans to G. W. Tom or to the partnership, and never knew that J. E. or C. T. White were members of the partnership until after the death of G. W. Tom. Under these facts, G. R. White had authority to sue in behalf of the partnership firm to cancel the notes in question as ostensible obligations of the partnership, and the allegation that he had the authority to bring such suit was immaterial. A surviving partner has the right to wind up partnership affairs; and Texas courts have uniformly held that a dormant partner is not a necessary party to a suit concerning the partnership property. Nor need a dormant partner join as a plaintiff or be joined as a defendant in an action upon or concerning partnership obligations. Speake v. Prewitt, 6 Tex. 252; Jackson v. Alexander, 8 Tex. 109; Tynburg & Co. v. Cohen, 67 Tex. 220, 2 S.W. 734; Boehm v. Calisch, Tex.Sup., 3 S.W. 293; American Nat. Bank of Wichita Falls v. Haggerton, Tex.Civ.App., 250 S.W. 279; Masterson v. Heitmann & Co., 38 Tex.Civ. App. 476, 87 S.W. 227.

It may be observed that by his cross-action G. R. White also sought, individually, to cancel the notes in question, and, since the pleadings and evidence raised the issue of his individual liability, and since the pleadings and evidence also raised the issue of the forgery of his signature to several of the notes sought to be canceled, such action was sustainable in the McCulloch county court, which first obtained jurisdiction of these matters. It may also be noted here that appellant made no objection to the suit because of nonjoinder of parties.

Nor is the contention of appellant sustained that the trial court erred in rendering judgment canceling the notes because of insufficient evidence to support the jury findings that Tom borrowed the money evidenced by the notes for personal purposes separate from the partnership business; or that appellant knew of these facts, or in the exercise of reasonable diligence should have known of such facts.

The partnership of White & Tom began in 1923 or 1924, and ended at the death of Tom, in 1934. G. R. White handled the finances of the partnership, and Tom actually operated the business, and its business capital consisted of something over $200,000, most of which represented borrowed money. It was the custom and duty of G. W. Tom to make reports to White concerning the expenditure and indebtedness incurred by the firm in his actual management of the cattle business. On two occasions White wrote Tom concerning the amount of the indebtedness owed by the partnership to appellant, Miller, and in each instance Tom stated that the partnership only owed Miller one note for $2,500, on which appellant had requested Tom to obtain the signature of White, and which White admitted signing upon the suggestion and request of Tom. The several notes herein canceled were signed, "White & Tom," and were purported to be also signed by both G. W. Tom and G. R. White, individually. Several witnesses, including appellee White, testified that the signature of G. R. White on such notes was not his signature. It purported to be the signature of White as written by G. W. Tom. Appellant admitted that the original notes evidencing such indebtedness did not have the name of White signed thereto; but were signed alone by Tom. Appellant testified that he requested Tom to obtain the signature of White not only on the $2,500 note, but also on the $3,000 and $1,800 notes, and that the three notes were delivered to him by Tom at the same time with the signature of White thereon, although the notes last mentioned bore a different date from that of the $2,500 note. The letters between Tom and White showed that White signed the $2,500 note in 1929, the $2,500 note sued upon was dated November 14, 1932, and several witnesses testified to evidences of alterations as to the date of the $2,500 note in suit. Numerous checks of G. W. Tom, payable to Miller, against his individual deposit in the bank at Stanton, were introduced in evidence. Miller testified that after 1922 or 1923 G. W. Tom never owed him anything individually. The accounts and records kept by Tom of the partnership affairs showed that the money evidenced by these three notes never went into the partnership business; and, in making income tax reports of the partnership to White, Tom never reported said notes as partnership indebtedness, although the $3,-000 and $1,800 notes represented renewal of indebtedness of long standing, appellant testifying that the $3,000 loan was made to Tom in 1923 or 1924. On the date the note for $3,000 was executed, Tom deposited the check of Miller for $3,000 in the Stanton bank to his individual account. On the date the $1,800 note was executed, Tom likewise deposited the check of Miller to his individual account; and the same is true on the date of the execution of the $1,000 note. On each of these dates the account of Miller in said bank was charged with these checks. The undisputed evidence showed that all of these checks were payable to Tom, individually, and not to the partnership firm. Miller testified that the note for $830 and the note for $700 were given in payment of interest. Appellant, Miller, never knew or saw appellee G. R. White prior to the death of Tom. It was agreed that at no time did White personally know of any loans, except the $2,500 note, by Miller to Tom; nor did either of the other partners ever know of such transactions until after the death of Tom. The evidence showed material alterations in the dates of maturity of the $3,000 and the $1,000 notes; and the jury found that each of these alterations was made after the delivery of the notes to appellant Miller. The jury further found that G. R. White could not by the exercise of reasonable diligence have known of any of the payments made by G. W. Tom to appellant Miller upon these obligations. The evidence showed that Tom gave Miller numerous checks upon his personal account, marked in payment of "interest," and likewise gave numerous checks against the checking account of White & Tom, in the Stanton bank, to Miller, marked "interest." The evidence therefore presents a situation where a partner has borrowed money for individual purposes and has given, or attempted to give, a firm obligation for it. No contention is made that Tom had authority to give firm obligations or notes for his individual debts. The facts and circumstances detailed were sufficient to sustain the jury's findings that Miller had notice, or in the exercise of ordinary diligence should have known, that Tom was borrowing the money for individual purposes rather than for the benefit of the partnership. The rule is settled that a firm is not liable on a loan made to one partner only and solely on his credit, even though he uses the money for the firm. Randall v. Merideth, 76 Tex. 669, 13 S.W. 576;

Burleigh v. Parton, 21 Tex. 585; Nolan County v. Simpson, 74 Tex. 218, 11 S.W. 1098; Green v. Waco State Bank, 78 Tex. 2, 14 S.W. 253; Patty v. Hillsboro Roller Mill Co., 4 Tex.Civ.App. 224, 23 S.W. 336; Phillips v. Stanzell, Tex.Civ.App., 28 S.W. 900; Lutz v. Miller, 102 W.Va. 23, 135 S. E. 168, 50 A.L.R. 432, and cases cited annotation.

The jury found with respect to the individual liability of appellee White upon sufficient evidence that his name had been signed on the $3,000 note and the $1,000 note without his authority, knowledge, or consent.·

The jury also found with respect to both the individal liability of White and the liability of the partnership of White & Tom upon sufficient evidence that the $3,000 note and the $1,000 note had been altered after their execution and delivery to appellant by changing the time of payment therein written. That is, the evidence was sufficient as showing that the date of payment of the $3,000 note was changed .from 1929 to 1932; and as showing that the date of payment of the $1,000 note was changed from "one year" to "two years" after date. If the date of payment of the $3,000 note had not been changed, it would have been barred by limitation. The alteration of the $1,000 note did not affect immediately the limitation against it, but did postpone the running of the statute one year.

, Appellant contends that the only alteration which the jury found in the note for $1,000 was to change the date of its payment from one year to two years, and that therefore such alteration was immaterial and would not be a defense to the note. Article 5939, §§ 124, 125, R.S.1925, provides that, where a negotiable instru-·ment is materially altered without the consent of all·parties liable thereon, it is avoided except as against innocent holders or those who authorized the alteration, or subsequent indorsers; and further provides that, any alteration is material with respect to "the date," and to the "time or place of payment." This statute manifestly condemns an alteration which changed the date of payment of a note from ·one to two years, as was found to have been done in the instant case.

 The court properly canceled the note for $830 and the note for $700, because the evidence showed that they were given in payment of interest on the original notes, which the jury found not to be obligations of the partnership of White & Tom, and in payment of interest on the notes found by the jury to have been materially altered after their delivery to appellant, and therefore void. Appellant suggests in his brief that these notes "probably included interest on the $2,500 note upon which liability was admitted." The evidence does not show that interest on the $2,500 note was included in these two interest notes, nor the amount of any such interest if included. Appellant had the burden of showing the amount of interest due on the $2,500 note and included in these two interest notes. This he did not do, and no issue was submitted or requested to be submitted to the jury as to whether the two interest notes included interest on the $2,500 note. The fact that they "probably" did include such interest will not suffice as a basis for judgment for such interest.

 Nor did the trial court err in rendering judgment canceling the $3,000 · note and the $1,800 note, because of the claim that the cause of action to cancel said notes was barred by the four-year statute of limitation. Appellee White alleged that the notes sought to be canceled were given as the individual obligations of G. W. Tom, and that the notes were made ostensible obligations of the partnership of White & Tom through the collusion and fraud of Tom and Miller; that the jury found that the money was not borrowed for partnership purposes; and that appellant knew, or should have known in the exercise of ordinary care, these facts. The jury also found that White had no knowledge or notice of any of the payments made on said obligations by Tom to appellant; and the· testimony of all parties revealed that White had no actual notice or knowledge of the obligations until after the death of Tom, when appellant first told him of the notes. In such situation the period of limitation ran from the time of the discovery of the fraud, or the time when it ought to have been discovered by the exercise of proper diligence and inquiry under the circumstances; and the jury found that White had no knowledge or notice of any of the transactions, and that he could not in the exercise of reasonable diligence have discovered same. These facts bring the case with regard to limitation within the rule stated in 7 Tex.Jur. § 41, as follows: "The period of limitation begins to run from the time of discovery of the fraud, or the time when it ought to have been discovered by

492

the exercise of proper diligence and inquiry in the circumstances."

The judgment of the trial court will be affirmed.

Affirmed.