## CHARLESTON.

A. S. LESLIE *v.* ED OAKLEY

(No. 6490)

Submitted October 15, 1929.    Decided October 22, 1929.

*C. S. Minter,* for appellant.
*Chas. L. Estep,* for appellee.

WOODS, PRESIDENT:

A. S. Leslie and Ed Oakley, by virtue of an oral agreement, entered into a co-partnership in 1908 for the purpose of conducting a jewelry business in the city of Logan with no limitation as to the length of time the said co-partnership was to exist. The co-partnership, which was styled Leslie & Oakley, continued until dissolved by the court.

Oakley was more or less active in the conduct of the business from its inception until August, 1919, after which date, with the exception of a few days around Christmas, 1919, he gave no further time to the partnership. His time thereafter was devoted exclusively to the sale of automobiles, in which he had been interested since 1915. Leslie, however, continued to manage the jewelry business, without any apparent objection to Oakley's action, until 1925. Within the latter year, Leslie, after becoming thoroughly convinced that it was useless to continue it further, instituted this suit to dissolve and wind up the affairs of the partnership. At the instance of the partners, the accounting between them was withheld for a future date. After a report on accounts due creditors and a decree directing payment of same, the partners borrowed $18,065.55, giving their joint note therefor, and paid off the firm creditors. Oakley later paid this note from his individual funds. The commissioner in stating an account between the partners, after considering the several withdrawals and credits of each, and allowing Leslie a salary of $21,725.00 for running the business after Oakley's withdrawal from active participation in the co-partnership, found Oakley to be indebted to the firm in the amount of $16,967.63 more than Leslie. Subtracting Leslie's one-half ($8,483.81½) from $9,936.05 (Leslie's share in the joint note, hereinbefore referred to, together with interest thereon), $1,452.24 remains due and owing from Leslie to Oakley. The court overruled Oakley's exception to the item of salary, and it is from this ruling that Oakley makes his principal complaint.

Is Leslie entitled to compensation in the conduct of the business from August, 1919, until the institution of the suit to dissolve? It is undoubtedly true, as a general rule, that partners are not entitled to charge each other, or the firm of which they are members, for services in the co-partnership business, unless there is a special agreement to that effect, or such agreement can be implied from the course of dealing between them. See Note, 71 L. R. A. (N. S.) 384. This rule has been approved and applied, from time to time, in the Virginias, in cases where the services of the several partners in behalf of the common enterprise have not been equal either in extent or in value. *Gay* v. *Householder,* 71 W. Va. 277; *Smith* v. *Brown,* 44 W. Va. 342; *Taylor* v. *Dorr,* 43 W. Va. 351; *Hyre* v. *Lambert,* 37 W. Va. 26; *Roots* v. *Mason City,* 27 W. Va. 483; *Forrer* v. *Forrer,* 29 Grat. 134; *Patton* v. *Calhoun's Ex'rs.,* 4 Grat. 138. In fact our Court has held that although one partner attends almost exclusively to the business of the partnership, his managerial services will not *per se* increase the share of the profits to which he will otherwise be entitled. *Smith* v. *Brown, supra; Taylor* v. *Dorr, supra.* In other words, there must be an agreement for compensation before such partner can recover although he performs all the services for the firm. It is well settled law that every partner is bound to work to the extent of his ability for the benefit of the whole, without regard to the services of his co-partners, and without comparison of value; for services to the firm cannot, from their very nature, be estimated and equalized by compensation of difference. In the absence, therefore, of special provision allowing compensation for services, the law will not make any, nor infer one from the greater industry or greater ability of any one partner. As stated by the Virginia Court: "Parties assuming this relation to each other are supposed to know the law and to intend to be governed by it, unless they agree to be bound by some other rule." *Forrer* v. *Forrer, supra.* In the last mentioned case the fallacy of allowing compensation in the absence of an agreement, express or implied, is indicated in the following language: "So soon as the courts undertake, upon a mere estimate of a partner's services, to award compensation in one case, they must do so

in all cases where the skill and labor and diligence are unequally bestowed. This would be simply to abolish the rule of law, and to place the right to compensation not upon contract, but upon the principle of quantum meruit.''

No express agreement is shown in evidence to the effect that the partners were to receive compensation for their services. So, if the plaintiff is to prevail, such an agreement, if any, must be inferred from the course of the business or the nature of the services performed. Can a contract be inferred in the present case? Leslie does not state that Oakley agreed to perform any particular portion of the duties incident to the joint enterprise. Both were watchmakers, and, so far as the record discloses, were familiar with and capable of performing any part of the work individually. · No attempt is made to show that an undue hardship was placed upon his shoulders, or that the business could not be handled properly, in the absence of the other partner. No objection was made to Oakley's withdrawal from active work in the partnership, and Leslie is not shown to have ever expressed his disapproval of such absence. Oakley stated that sometime after the beginning of the business and prior to August, 1919, he had discussed the question of compensation, but that Leslie had refused to agree to any such arrangement. Oakley explained that he was a single man at the time and wanted to have some definite understanding as to what portion of the profits each should be allowed to withdraw. Leslie contends that the business began to wane on the advent of good roads in Logan county, and that most people put their money into automobiles instead of jewelry; and that the jewelry business continued to decrease until he felt that the same should be closed out. No damage is claimed or shown to have been done to the business by reason of Oakley's absence. There is, certainly, nothing in all this that would raise a contract by implication between the partners that Leslie should be paid any sum for his services. Nothing is shown that is at all peculiar to this partnership except the great liberality and wonderful confidence of Oakley towards and in his partner, Leslie, in the management and control of the business. The item for compensation therefore falls for lack of evidence to support it.

The other points raised by the appeal and cross-assignment were based on exceptions taken to certain findings of fact in the commissioner's report. While these exceptions were apparently abandoned on the hearing before this Court, yet after a careful examination of the testimony upon which each finding was made, we are of opinion that the trial court was fully warranted in overruling all of said exceptions.

For the error of the court in allowing plaintiff compensation for his services, the decree of August 15, 1928, must be reversed and the cause remanded.

*Reversed and remanded.*