428 S.E.2d 49

**Robert L. LOWTHER, Plaintiff Below, Appellee,**

v.

**Fred L. RIGGLEMAN and Granville J. Zopp, Defendants Below, Appellees,**

v.

**Donald H. LOWTHER, Intervenor Below, Appellant.**

No. 20997.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided Feb. 25, 1993.

Jerald E. Jones, West & Jones, Clarksburg, for appellees Fred L. Riggleman and Granville Zopp.

Louis E. Enderle, Jr., Steptoe & Johnson, Clarksburg, R. Mike Mullens, Elkins, for appellant.

MILLER, Justice:

Donald H. Lowther appeals from an adverse ruling entered by the Circuit Court of Randolph County on June 25, 1991. The trial court ruled that excess money remaining from the sale of property owned by the Four Square Partnership should be distributed to the appellees, Fred L. Riggleman and Granville J. Zopp. The appellant contends that the trial court erred in ordering the excess money distributed to the appellees and that the money should have been ordered to be distributed to him because he is a nonpartner creditor of the partnership, unlike the appellees, who are partner credi-tors.[1] For the reasons that follow, we find for the appellant.

The appellees and Robert L. Lowther, brother of the appellant, formed Four Square Partnership in 1985. The three were equal partners. Their object in creating the partnership was to acquire real estate upon which to construct buildings to be used in a commercial retail venture. In the course of the partnership, both of the appellees loaned money to the partnership. Mr. Riggleman loaned the partnership $30,-000 and Mr. Zopp loaned the partnership a total of $50,000. Apparently, Robert L. Lowther convinced the appellant to loan the partnership at least $80,000.[2]

Although the record does not disclose the nature of the partnership's financial problems, it appears that the partnership did not fare well after the retail commercial venture began. The appellees offered Robert Lowther an option to purchase both their interests in the partnership and in a corporation formed to operate the commercial venture. Robert Lowther conditionally agreed to the option arrangement based upon his ability to find new investors in the partnership. The search for new investors was ultimately unsuccessful.

Upon learning of this failure, the appellees recorded deeds of trust securing their loans to the partnership. The appellee, Robert Lowther, also partially recorded documents purporting to be deeds of trust securing the loans of the appellant. The bank that had loaned money to the partnership for the construction of the retail building ultimately foreclosed under its deed of trust. The property was sold and, after paying off the bank, there was left $87,783, which became available for distribution because the partnership was in the process of dissolution.

---

1. The style of the case is a bit confusing as the original complaint was filed by Robert L. Lowther, who was a member of the partnership. He asked the circuit court to prevent any of the partners from disposing or receiving any of the assets of the partnership until the court made a determination as to who was legally entitled to receive them. Subsequently, the appellant, Donald Lowther, was granted the right to inter-vene in order to establish the priority of his loan to the partnership.

2. It is undisputed that the appellant loaned the partnership $80,000. The appellant also claims he later loaned the partnership $20,000, but the appellees deny that claim and contend that the $20,000 originated with Robert L. Lowther. Because the trial court did not make any conclusive finding on this issue, neither do we.

The trial court found the deeds of trust recorded by the appellees to be valid and found that the documents recorded in favor of the appellant were invalid. It determined that the appellant had loaned the partnership $80,000 and received a promissory note signed by the three partners. Despite this finding, the trial court determined that the appellees "had no actual notice of any valid lien in [the appellant's] favor upon the partnership real estate at the time they recorded their respective deeds of trust." Consequently, because their liens were filed ahead of the appellant's, the trial court ordered that the appellees should receive the excess proceeds realized from the sale by the bank of the partnership's retail building.

Counsel for the appellant argue that basic tenets of partnership law dictate that upon the dissolution of a partnership and the sale of a partnership's assets, any excess monies recovered from such a sale must first be applied to debts owed to general creditors before any monies may be used to repay debts owed to partners in a partnership. Both the relevant statute under our Uniform Partnership Act, W.Va. Code, 47–8A–1, *et seq.*, and case law based on the common law of partnership are clear and support this position.

Under the Uniform Partnership Act, the order of priorities in settling accounts of a partnership upon its dissolution is found in W.Va.Code, 47–8A–40, which provides, in relevant part:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(a) The assets of the partnership are:

"(I) The partnership property,

"(II) The contributions of the partners necessary for the payment of all the liabilities specified in clause [subsection] (b) of this paragraph [section].

"(b) The liabilities of the partnership shall rank in order of payment as follows:

"(I) Those owing to creditors other than partners,

"(II) Those owing to partners other than for capital and profits,

"(III) Those owing to partners in respect of capital,

"(IV) Those owing to partners in respect of profits."

Thus, under the foregoing statute, the liability of a partnership to creditors other than partners, such as the appellant, must be given greater priority in the order of payment than the liability owed by a partnership to its partners, such as the appellees, when the partnership is dissolved. The common law partnership rules regarding distribution of the assets of a partnership upon dissolution are much the same, as illustrated by Syllabus Point 4 of *Hyre v. Lambert*, 37 W.Va. 26, 16 S.E. 446 (1892):

"The assets of a firm are to be applied in the following order: First, in payment of the debts and liabilities of the firm to persons who are not partners; second, in payment to each partner ratably of what is due from the firm to him for advances, as distinguished from capital; third, in payment to each partner ratably of what is due from the firm to him in respect of capital; fourth, the ultimate residue, if any, is divisible among the partners in the proportion in which profits are divisible under the partnership contract."

*See also Jones v. Rose*, 81 W.Va. 177, 94 S.E. 41 (1917); *Floyd v. Duffy*, 68 W.Va. 339, 69 S.E. 993 (1910); *Koelz v. Brinkman*, 50 W.Va. 270, 40 S.E. 578 (1901).

Although not directly at issue in this case, we set out in Syllabus Points 1 and 2 of *Stump v. Wilson*, 100 W.Va. 227, 130 S.E. 463 (1925), the rule applicable to partners who leave or retire from a partnership before it is dissolved:

"1. The claim of a retiring partner against the firm is inferior to the claims of the partnership creditors. His demand cannot be paid until the debts of such creditors are discharged.

"2. A retiring partner may be restrained from securing a preference of his claim over those of the partnership creditors."

Thus, it is clear that even where a partner has left or retired from the partnership, his claim against the partnership is ordinarily considered to be inferior to those of "partnership creditors," i.e., non-partner creditors of the partnership.[3] These rules are codified in more detail in W.Va.Code, 47–8A–41 and –42.

■ There is no express language in the Uniform Partnership Act that states that a partner may not have a lien on partnership assets superior to that of a general creditor of the partnership upon its dissolution. As *Stump v. Wilson, supra,* points out, a retiring partner cannot secure a lien on partnership assets over its general creditors upon dissolution. Obviously, the same rule should apply to an existing partner. Thus, the common law was that a partner in a partnership dissolution could not assert a lien on partnership assets that would create a preferential claim over its general creditors. This same result has been reached interpreting the Uniform Partnership Act. *See, e.g., In re Johnson,* 51 B.R. 220 (D.C.Colo.1985); *In re Fulton,* 43 B.R. 273 (Bkrtcy.M.D.Tenn.1984); *Carter v. Carter,* 247 Ala. 409, 24 So.2d 759 (1945); *Retzke v. Larson,* 166 Ariz. 446, 803 P.2d 439 (1990); *Stroebel–Polasky Co. v. Slachta,* 106 Mich.App. 538, 308 N.W.2d 273 (1981). We agree with this rule, and, therefore, conclude that the appellees are not general creditors of the partnership on a par with the appellant.

In closing, we note that these rules regarding the priority of claims upon the dissolution of a partnership were not raised before the trial court. Both sides proceeded on the theory of who had the better recorded lien. The appellant's counsel on appeal raises for the first time the correct law with regard to a creditor of the partnership's enhanced status over a partner upon dissolution of the partnership.

■ Here, the case was tried without a jury and the law given to the trial court was clearly erroneous, even though no objection was made. The situation is analogous to one in which erroneous instructions have been given to a jury and no objection has been made. This is covered by Rule 51 of the West Virginia Rules of Civil Procedure, which states, in part: "but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection." [4]

In *Mollohan v. Black Rock Contracting, Inc.,* 160 W.Va. 446, 449, 235 S.E.2d 813, 815 (1977), we said this about Rule 51: "Rule 51, as noted in *Casto v. Martin,* [159 W.Va. 761, 230 S.E.2d 722 (1976)], and *Earp v. Vanderpool,* [160 W.Va. 113], 232 S.E.2d 513 (1976), ... allows us, in the interest of justice, to notice a plainly erroneous instruction even if it was not objected to before jury argument." Earlier, in *Earp v. Vanderpool,* 160 W.Va. 113, 232 S.E.2d 513 (1976), we held in Syllabus Point 6:

"Where an error respecting an instruction is not preserved by compliance with Rule 51 of the West Virginia Rules of Civil Procedure but is obvious and substantially affects the fairness and integrity of the trial proceeding, the interests of justice may mandate the exercise of

---

3. In Syllabus Point 3 of *Lutz v. Miller,* 102 W.Va. 23, 135 S.E. 168 (1926), we stated the foregoing principle with an added limitation: "A partner cannot repay himself out of the firm's assets for advances made the partnership, except with the assent of his co-partners, express or implied, *and not then until the general creditors are paid.*" (Emphasis added). See also *Burdett v. Greer,* 63 W.Va. 515, 60 S.E. 497 (1908), where we stated in Syllabus Point 1 that contracts formed by a partner, while part of the partnership, are binding on that partner even after the dissolution of the partnership: "All the partners are still bound, after dissolution, by a contract made during the partnership."

4. The relevant text of Rule 51 of the Rules of Civil Procedure provides:

"No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection. Opportunity shall be given to make objection to the giving or refusal to give an instruction out of the hearing of the jury."

this Court's discretionary authority to note plain error."

Moreover, in *Earp*, we recognized that "[s]uch discretion must be exercised sparingly and only in exceptional cases." 160 W.Va. at 121, 232 S.E.2d at 518. The polestar of any inquiry is whether the legal error committed is so substantial that it can be said from the record that a grave injustice was done to the complaining party. The rule is not designed to enable a party to seek an advantage by deliberately refusing to object to clear legal error. Other jurisdictions exercise much the same test with regard to their counterpart to Rule 51. *See, e.g., Morris v. Travisono,* 528 F.2d 856 (1st Cir.1976); *Williams v. City of New York,* 508 F.2d 356 (2d Cir. 1974); *Brown v. Avemco Inv. Corp.,* 603 F.2d 1367 (9th Cir.1979); *Jackson Printing Co., Inc. v. Mitan,* 169 Mich.App. 334, 425 N.W.2d 791 (1988); *Johnson v. Jensen,* 433 N.W.2d 472 (Minn.App.), *rev'd on other grounds* 446 N.W.2d 664 (Minn.1989); *Keller v. Noble,* 229 Neb. 542, 428 N.W.2d 170 (1988); *Falk v. Keene Corp.,* 113 Wash.2d 645, 782 P.2d 974 (1989); *Triton Coal Co. v. Mobil Coal Producing, Inc.,* 800 P.2d 505 (Wyo.1990).

Furthermore, it appears that a number of jurisdictions without the benefit of any particular procedural rule have adopted a general plain error rule in civil cases which allows an appellate court to consider an error not raised below when such an error results in a manifest injustice. *See, e.g., Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109 (Alaska 1990); *City Bank v. Saje Ventures II,* 7 Haw.App. 130, 748 P.2d 812 (1988); *Ramirez v. Bureau of State Lottery,* 186 Mich.App. 275, 463 N.W.2d 245 (1990), *app. denied,* 439 Mich. 861, 475 N.W.2d 819 (1991); *Murin v. Frapaul Constr. Co.,* 240 N.J.Super. 600, 573 A.2d 989 (1990); *Falk v. Keene Corp., supra; Jacobs v. Jacobs,* 138 Wis.2d 19, 405 N.W.2d 668, *rev. denied* 139 Wis.2d 860, 415 N.W.2d 162 (1987).

We have not adopted a general rule of harmless error in civil cases [5] and have traditionally stated the principle found in Syllabus Point 3 of *O'Neal v. Peake Operating Co.,* 185 W.Va. 28, 404 S.E.2d 420 (1991):

" 'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' Syllabus Point 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964)."

It is sufficient for purposes of this case to hold that the doctrine of plain error will be recognized in a civil case where the case was tried before a judge without a jury and both parties without objection have allowed the court to try the case on a totally erroneous legal theory that was dispositive of the outcome of the case to the substantial prejudice of the appealing party.

The record amply demonstrates that both parties tried the case on the sole and erroneous issue that the priority of the various parties' notes and deeds of trust would determine who was entitled to the excess amount held by the bank. This was clearly not the correct law. Our result would be different if it were shown that the disputed legal issue was not clear cut.

For the foregoing reasons, we find that the trial court committed reversible error when it held that the partnership debts owed to the appellees took precedence over those owed to the appellant. We, therefore, reverse the judgment of the Circuit Court of Randolph County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

---

5. In criminal cases, we have adopted Rule 52 of the West Virginia Rules of Criminal Procedure, which states:

"(a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."