516 S.E.2d 267

**Richard SZTURM, Individually, on Behalf of Huntington Blizzard Hockey, Plaintiff Below,**

v.

**HUNTINGTON BLIZZARD HOCKEY ASSOCIATES LIMITED PARTNERSHIP, et al., Defendant Below, Appellee.**

**Robert D. Henry, Defendant Below, Appellant.**

**No. 25196.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided May 17, 1999.

F.T. Graff, Jr., Esq., Elizabeth D. Harter, Esq., Bowles Rice McDavid Graff and Love, PLLC, Charleston, West Virginia, Attorneys for Appellant.

James A. Dodrill, Esq., Huntington, West Virginia, Attorney for Appellee Special Receiver.

McGRAW, Justice:

This case concerns whether an individual who is both a limited partner and management employee of a limited partnership is, by virtue of such status, presumptively prohibited from asserting a priority claim for wages upon dissolution of the partnership. Because the Revised Uniform Limited Partnership Act ("RULPA"), W. Va.Code §§ 47–9–1 to – 63, expressly permits a partner of a limited partnership to transact business with the partnership and enjoy the same rights as a person who is not a partner, W. Va.Code § 47–9–7 (1981), we conclude that, as a general rule, a limited partner is not per se prohibited from obtaining a lien superior to the claims of the partnership's general creditors.

I.

Huntington Blizzard Hockey Associates Limited Partnership ("Huntington Blizzard"), a West Virginia limited partnership governed by the provisions of the RULPA, was engaged in the business of owning and operating a professional hockey team. The partnership was dissolved in September 1995 by the Circuit Court of Cabell County pursuant to W. Va.Code § 47–9–45 (1981). The circuit court simultaneously appointed a special receiver under W. Va.Code § 53–6–1 (1923), for the purpose of winding up the affairs of the partnership. An accounting report subsequently tendered by the special receiver to the circuit court indicated that, after the sale of the partnership's assets, Huntington Blizzard had approximately $291,893 to satisfy creditor and partner-contribution claims totaling $1,912,780.

Appellant Robert D. Henry was a limited partner and employee of Huntington Blizzard, as well as a shareholder in the limited partnership's general partner, Huntington Hockey, Inc. The sparse record in this case does not shed light on Henry's specific function within the partnership, although Henry himself concedes in his brief that he was "a management employee." Following dissolution, Henry submitted a wage claim of $44,426, which included a demand for liquidated damages in the amount of $4,153. Henry's salary went unpaid between some unspecified point-in-time in 1994, and the dissolution of the limited partnership in September 1995.

The special receiver, in its report to the circuit court submitted on May 1, 1996, recommended that Henry's wage claim (together with similar claims submitted by two other former employees) be relegated to the status of an unsecured obligation, with the exception of $250 that was given priority status under the purported authority of W. Va.Code § 21A–5–18(1) (1945).[1] (Unsecured creditors were paid on a pro rata basis from the assets of the limited partnership remaining after the payment of secured and judgment credi-

---

1. Section 21A–5–18(1) provides:

   In the event of any distribution of an employer's assets pursuant to an order of the court under a law of this State, payments then or thereafter due and interest allowable thereon shall be paid in full prior to all other claims except taxes and claims for wages. Wage claims in excess of two hundred fifty dollars per claimant or earned more than six months before the commencement of the proceeding, shall not be entitled to priority.

tors, which amounted to approximately 21% of their claims).

Henry filed timely objections to the special receiver's recommendation on May 28, 1996. Following a June 13, 1996 hearing on the matter, the circuit court denied these objections and adopted the special receiver's recommendation pertaining to Henry's claim by an order entered December 18, 1997.[2] It is from this order that Henry now appeals.

## II.

Henry challenges the circuit court's denial of his priority wage claim, asserting that the various conclusions of law set forth in the report of the special receiver (which were adopted by the lower court) are erroneous. Appellee, the substitute special receiver[3] of the partnership, acknowledges error with respect to the circuit court's ruling, although he limits the concession to perceived defects in the order entered by the lower court. We reverse, concluding that there was no valid legal basis upon which to differentiate Henry from other employees based simply upon his

status as a limited partner and management employee of the partnership.[4]

We note at the outset that the parties to this litigation have proceeded upon the unchallenged assumption that an employee has a priority lien for the payment of wages upon the dissolution of a partnership. The Court assumes, without necessarily deciding, that this premise is correct. Consequently, after initially discussing and rejecting certain legal conclusions reached by the circuit court relative to Henry's underlying right to collect wages and liquidated damages, we focus on the more central question of whether his status as a limited partner and manager of the Huntington Blizzard necessarily bars him from asserting a lien superior to the claims of other general creditors.

The following is a summary of the legal justifications advanced by the special receiver (and embraced by the circuit court) for subordinating Henry's wage claim: (1) the rights normally afforded employees under W. Va.Code § 21–5–4 (1975)[5] do not extend to

**2.** For reasons that are not apparent from the record, the demands of the other two wage claimants-James Burlew and Robert DeStocki-were allowed by the circuit court, notwithstanding the fact that DeStocki was, like Henry, a limited partner of Huntington Blizzard.

**3.** The special receiver originally appointed by the circuit court was permitted to withdraw in June 1997. Thus, the current substitute special receiver was not involved in the original proceedings pertaining to Mr. Henry.

**4.** The record submitted to this Court does not contain a transcript of the June 13, 1996 hearing, notwithstanding the fact that the circuit court's order based its denial of Henry's objections upon "reasons set forth during the hearing." We take this opportunity to again admonish "that the responsibility and burden of designating the record is on the parties and that appellate review must be limited to those issues which appear in the record presented to this Court." *State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994) (citing *Thornton v. CAMC*, 172 W.Va. 360, 364, 305 S.E.2d 316, 320–21 (1983)) (footnotes omitted). We are hesitant to undertake review of the circuit court's order without the aid of a transcript that might disclose a rationale for denying Henry's wage claim that differs from the grounds articulated by the special receiver. However, since both parties to the present proceedings apparently concede that the circuit court effectively adopted all or part of the reasoning of the special master-a conclusion that is

bolstered by other parts of the record-we will address the circuit court's ruling in the context of the special receiver's report. Moreover, we note that "it is not the reasons assigned upon which the [lower] court decided a question that is to be reviewed, but the action of the court itself; and the question always in the appellate court is, whether the judgment to be reviewed is correct." Syl. pt. 5, in part, *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 134 S.E.2d 730 (1964). This statement is particularly appropriate where, as in the present case, the questions under review are purely issues of law.

**5.** W. Va.Code § 21–5–4 provides:

(a) In lieu of lawful money of the United States, any person, firm or corporation may compensate employees for services by cash order which may include checks or money orders on banks convenient to the place of employment where suitable arrangements have been made for the cashing of such check by employees for the full amount of wages.

(b) Whenever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours.

(c) Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages no later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least

Henry's claim because he was a management employee; (2) given Henry's management position, and the fact that he was not paid for over a year prior to the partnership's dissolution in 1995, it must be presumed that he agreed not to be paid; (3) W. Va.Code § 21A–5–18 limits all priority wage claims to $250; and (4) *Lowther v. Riggleman*, 189 W.Va. 68, 428 S.E.2d 49 (1993), precludes Henry from obtaining a lien superior to unsecured creditors because he was a limited partner of the partnership.[6] The first three of these four conclusions of law are clearly without merit, while the fourth requires a slightly more detailed analysis involving a comparison of this Court's rationale for its holding in *Lowther* with the relevant statutory language of the RULPA.

■ "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a

one pay period's notice of intention to quit the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.

(d) When work of any employee is suspended as a result of a labor dispute, or when an employee for any reason whatsoever is laid off, the person, firm or corporation shall pay in full to such employee not later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

(e) If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, That he shall cease to draw such wages thirty days after such default. Every employee shall have such lien and all other rights and remedies for the protection and enforcement of such salary or wages, as he would have been entitled to had he rendered service therefor in the manner as last employed; except that, for the purpose of such liquidated damages, such failures shall not be deemed to continue after the date of the filing of a petition in bankruptcy with respect to the employer if he is adjudicated bankrupt upon such petition.

6. The relevant portion of the special receiver's report stated as follows:

All three men have filed what they have styled as liens against the assets of the limited partnership pursuant to West Virginia Code 21–5–4 and in reliance on *Farley v. Zapata Coal Corp.*, [167 W.Va. 630, 281 S.E.2d 238 (1981)]. While clearly management employees are employees of the entity, the special receiver believes that reliance on the statute and the *Zapata* case, which deals with non-management employees, is inappropriate in this case.

The majority of the salary or wages claimed by the three men were earned and unpaid from 1994 forward. This would appear to be governed by West Virginia Code 21–5–3 which calls for wages to be paid to employees "at least once every two weeks, unless otherwise provided by special agreement." Since these three men were all part of the management of the limited partnership, one presumes that they had a special agreement not to pay themselves.

The special receiver further notes that West Virginia Code 21A–5–18 provides that "in the event of *any distribution of an employer's assets pursuant to an order of the court under a law of this State* ... [w]age claims in excess of two hundred fifty dollars per claimant or earned more than six months before the commencement of the proceeding, shall not be entitled priority." (Emphasis added) The special receiver notes that the distribution of the employer's assets are being made pursuant to an order of the Circuit Court of Cabell County pursuant to West Virginia Code 53–6–1. This would appear to limit the wage claims of the three men to $250 each....

The special receiver further believes that the West Virginia Supreme Court decision in *Lowther v. Riggleman*, [189 W.Va. 68, 428 S.E.2d 49 (1993)], is controlling in this case. In *Lowther*, partners of a partnership in dissolution attempted to get priority over the nonpartner creditors of the partnership. The Supreme Court noted that "[t]here is no express language in the Uniform Partnership Act that states that a partner may not have a lien on partnership assets superior to that of a general creditor of the partnership upon dissolution." *Id.* at 52. However, the Court pointed out that "the common law was that a partner in a partnership dissolution could not assert a lien on partnership assets that would create a preferential claim over its general creditors." *Id.* The Court, citing several decisions from various jurisdictions, noted that the same results were reached in interpreting the Uniform Partnership Act and adopted the same as the law of this State. The special receiver acknowledges that the Huntington Blizzard is a limited partnership, but notes that West Virginia Code 47–9–63 provides that to the extent there is no statute on an issue in the Limited Partnership Act, the Uniform Partnership Act applies. There is no statute which allows limited partners to obtain a lien in preference of general creditors of a limited partnership.

clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996).

■ The special receiver's initial conclusion that W. Va.Code § 21–5–4,[7] which delineates an employee's right to payment of wages following separation from employment, does not apply to management employees finds absolutely no support in the Wage Payment and Collection Act (the "Act"), W. Va.Code §§ 21–5–1 to –18. The Act defines "employee" to "include[ ] any person suffered or permitted to work by a person, firm or corporation." W. Va.Code § 21–5–1(b) (1987). The statute's broad definition of employee thus defeats any contention that the protections afforded by § 21–5–4 do not extend to management employees. Therefore, whatever its relevance to the special receiver's ultimate recommendation regarding Henry's claim, we find that this interpretation of § 21–5–4 was erroneous.[8]

■ The second legal conclusion, that Henry's position within the limited partnership and the fact that he had not been paid his wages for a long period of time mandates a presumption that he assented not to be paid, likewise finds no basis in law. We have not been directed to any authority that would presumptively bar a limited partner or management employee of a limited partnership from receiving wages. While the Revised Uniform Partnership Act provides that "[a] partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership," W. Va.Code § 47B–4–1(h) (1996),[9] this default rule, although it applies to a general partner of a limited partnership, *see* W. Va.Code § 47–9–24(a) (1984), does not extend to limited partners or management employees. There is thus no legal presumption that a limited partner who provides services to a partnership does so without expectation of remuneration.

■ Nor is there any basis for the special receiver's oblique suggestion that Henry waived his right to the payment of wages by continuing to work notwithstanding the non-payment of wages, and the partnership's violation of W. Va.Code § 21–5–3 (1979), which, in relevant part, requires that an employer "shall settle with its employees at least once every two weeks, unless otherwise provided by special agreement." This Court has previously rejected such an argument. In *Britner v. Medical Sec. Card, Inc.,* 200 W.Va. 352, 354–55, 489 S.E.2d 734, 736–37 (1997) (*per curiam* ), three employees brought suit alleging that their employer had failed, over a four-year period, to pay them wages due under a provision in their written employment contracts requiring 15% annual pay increases. The employer argued that the employees were estopped from bringing such a claim based upon their acquiescence in the non-payment of the annual raises. We rejected this argument, citing W. Va.Code § 21–5–10 (1975)[10] and stating that

(Footnotes and paragraph numbering omitted.)

7. See note 5, *supra,* for the text of W. Va.Code § 21–5–4.

8. Since the record before us is not clear regarding whether Henry's claim for liquidated damages arose before or after the appointment of the special receiver, we express no opinion as to whether liquidated damages may accrue under subsection (e) of § 21–5–4 following such appointment.

9. This presumption against remuneration for service rendered to the partnership is derived from the common law. *See* Syl. pt. 1, *Leslie v. Oakley,* 108 W.Va. 64, 150 S.E. 226 (1929) ("One partner is not entitled to compensation for his services in attending to partnership affairs, unless there be a contract therefor, express or implied."); Syl. pt. 4, *Kyle v. Griffin,* 76 W.Va. 214, 85 S.E. 559 (1915) ("A member of a partnership, all the members of which are active and give time and service, is not entitled to compensation for his services, in the absence of clear proof of a special agreement therefor.").

10. W. Va.Code § 21–5–10 provides:

Except as provided in section thirteen, no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void.

*See also* W. Va.C.S.R. § 42–5–1.7 (1990) ("No provision of the act or regulations promulgated pursuant thereto may be waived by private agreement, and any attempted waiver is null and void.").

[t]he legislature has attempted to prevent employers from abusing their positions by compromising the wages of employees. The language of W. Va.Code § 21–5–10 is mandatory. An employer must pay earned wages to its employees. Any other reading would seriously compromise and undermine the legislative intent of W. Va. Code § 21–5–10.

200 W.Va. at 355, 489 S.E.2d at 737.

The recognition of a waiver in such situations would, moreover, effectively require an employee to immediately seek relief under W. Va.Code § 21–5–12 (1975), or else risk losing the right to payment of wages as afforded by the Act. The effect of such an implicit requirement could obviously have a serious disruptive impact on employee-employer relations. Thus, the mere fact that Henry worked without pay for a lengthy period of time prior to the partnership's dissolution, in clear violation of § 21–5–3, does not establish a waiver of the right to agreed-upon wages.

■ The third pillar supporting the circuit court's ruling, the conclusion that W. Va.Code § 21A–5–18(1) (1945)[11] limits *all* priority wage claims to $250, is erroneous in the face of the clear language of the statute. The cardinal rule of statutory construction is that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Rather than limiting all priority wage claims to $250, § 21A–5–18(1) merely governs the priority of *contributions* owed to the unemployment compensation fund. The term "payments," as used in § 21A–5–18(1), refers exclusively to "the money required to be paid or that may be voluntarily paid into the state unemployment compensation fund as provided in article five of [Chapter 21A]." W. Va. Code § 21A–1A–22 (1996). The statute in question straightforwardly gives the unemployment compensation fund a first-priority lien upon the proceeds of any judicially-ordered distribution of an employer's assets, with the exception of claims for taxes and employee wages not exceeding $250. Section

21A–5–18(1) does not otherwise control the priority of wage claims vis-à-vis the claims of other creditors. Moreover, in the present case the statute was inapplicable because, according to the special receiver's uncontested representation in her report, no funds were due the unemployment compensation fund. We therefore find that the effect ascribed to § 21A–5–18(1) in the proceedings below was erroneous.

■ We turn now to the pivotal issue in this case: Whether Henry, as a limited partner of Huntington Blizzard, is legally precluded from asserting a lien superior to that of other general creditors in light of this Court's previous holding in *Lowther v. Riggleman*, 189 W.Va. 68, 428 S.E.2d 49 (1993). This question requires us to scrutinize *Lowther* in the context of countervailing provisions contained within the RULPA, and ultimately to reconsider its continued validity in the face of West Virginia's adoption in 1995 of the Revised Uniform Partnership Act ("RUPA"), 1995 W. Va. Acts ch. 250 (codified as amended at W. Va.Code ch. 47B).

In *Lowther*, two partners secured loans to their partnership by recording deeds of trust encumbering the partnership's real property, creating liens superior to an instrument recorded by a non-partner creditor. Following foreclosure by a bank whose loan was secured by a first-priority deed of trust on the subject property, the two partners attempted to obtain the excess proceeds realized from the trustee sale. (The partnership in question was in the process of dissolution at the time of foreclosure.) The circuit court permitted the two partners to take these proceeds, predicating its ruling upon their superior lien positions relative to the other creditor. This Court reversed, stating in Syllabus point 2:

The common law was that a partner in a partnership dissolution could not assert a lien on partnership assets that would create a preferential claim over its general creditors. The same result has been achieved interpreting the Uniform Partnership Act, W. Va.Code, 47–8A–1, *et seq.*

The relevant provision of the Uniform Partnership Act that informed our decision in

---

**11.** See note 1, *supra,* for the text of W. Va.Code § 21A–5–18(1).

*Lowther*–W. Va.Code § 47–8A–40 (1953),[12] *repealed by* 1995 W. Va. Acts ch. 250–was understood by this Court to mandate that "the liability of a partnership to creditors other than partners must be given greater priority in the order of payment than the liability owed by a partnership to its partners when the partnership is dissolved." Syl. pt. 1, in part, *Lowther.*

■ This Court's holding in *Lowther* does not find similar support in the text of the RULPA. The RULPA eliminates the fraudulent conveyance provision contained in its predecessor, and makes no distinction between partner and non-partner creditors with respect to payments made upon the dissolution of a limited partnership. *See* W. Va.Code § 47–9–47(1) (1981).[13] Moreover, § 107 of the RULPA, codified at W. Va.Code § 47–9–7 (1981), provides:

12. Prior to its repeal, W. Va.Code § 47–8A–40 provided, in relevant part:

In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:
(a) The assets of the partnership are:
(I) The partnership property,
(II) The contributions of the partners necessary for the payment of all the liabilities specified in clause [subsection] (b) of this paragraph [section].
(b) The liabilities of the partnership shall rank in order of payment as follows:
(I) Those owing to creditors other than partners,
(II) Those owing to partners other than for capital and profits,
(III) Those owing to partners in respect of capital,
(IV) Those owing to partners in respect of profits.

13. The full text of W. Va.Code § 47–9–47 is as follows:

Upon the winding up of a limited partnership, the assets shall be distributed as follows:
(1) To creditors, *including partners who are creditors,* to the extent permitted by law, in satisfaction of liabilities of the limited partnership other than liabilities for distributions to partners under section thirty-one or thirty-four of this article;
(2) Except as provided in the partnership agreement, to partners and former partners in satisfaction of liabilities for distributions under said section thirty-one or thirty-four; and

Except as provided in the partnership agreement, a partner may lend money to and transact other business with the limited partnership and, subject to other applicable law, *has the same rights and obligations with respect thereto as a person who is not a partner.*

(Emphasis added.) These provisions, which differ markedly from the statutory framework found determinative in *Lowther,* make clear that there is no per se restriction upon the right of a partner to obtain and assert a lien superior to that of a general creditor of the limited partnership. We therefore hold that pursuant to the relevant provisions of the RULPA, W. Va.Code §§ 47–9–7 & – 47(1), a partner may, subject to other applicable law, obtain a lien superior to that of other general creditors of the limited partnership.[14] Consequently, the circuit court

(3) Except as provided in the partnership agreement, to partners first for the return of their contributions and secondly respecting their partnership interests, in the proportions in which the partners share in distributions. (Emphasis added.)

14. We are mindful of the potential mischief that could result from a partner's self-dealing under this interpretation of the RULPA. We note, however, that § 47–9–7 makes a partner's right to transact business with the limited partnership "subject to other applicable law." The comment by the drafters of this provision states that "other doctrines developed under bankruptcy and insolvency laws may require the subordination of loans by partners under appropriate circumstances." Unif. Limited Partnership Act § 107 cmt., 6A U.L.A. 94 (1995). The comment to an identical provision contained in section 404 of the RUPA, W. Va.Code § 47B–4–4(f) (1995), discusses this proposition in greater depth:

Subsection (f) authorizes partners to lend money to and transact other business with the partnership and, in so doing, to enjoy the same rights and obligations as a nonpartner. That language is drawn from RULPA Section 107. The rights and obligations of a partner doing business with the partnership as an outsider are expressly made subject to the usual laws governing those transaction. They include, for example, rules limiting or qualifying the rights and remedies of inside creditors, such as fraudulent transfer law, equitable subordination, and the law of avoidable preferences, as

committed error by denying Henry's purported wage lien upon the authority of *Lowther.*

■ Finally, we note that the same statutory language that requires our rejection of *Lowther* in the context of limited partnerships has recently been incorporated into the partnership law of our jurisdiction as a result of West Virginia's adoption of the RUPA in 1995. *Compare* W. Va.Code § 47–9–47(1) *with* W. Va.Code § 47B–8–7(a) (1996); and W. Va.Code § 47–9–7 *with* W. Va.Code § 47B–4–4(f) (1995). Thus, to the extent that *Lowther* holds that a partner of a partnership in dissolution is presumptively barred from asserting a lien superior to the non-partner general creditors of the partnership, it has been legislatively overruled by the adoption of the RUPA.

### III.

In light of the fact that this Court has not been directed to any valid authority supporting the proposition that appellant Henry, as a limited partner and management employee of Huntington Blizzard, should be treated differently from other employees of the limited partnership with respect to the payment of wages following dissolution, the judgment of the Circuit Court of Cabell County is hereby reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

well as general debtor-creditor law. The reference to "other applicable law" makes clear that subsection (f) is not intended to displace those laws. . . .

Unif. Partnership Act § 404 cmt. 6, 6 U.L.A. 67 (1995). Thus, a partner's right to be treated as any other creditor (or, in this case, employee) is not unqualified.