535 S.E.2d 475

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Thomas SNODGRASS, Defendant
Below, Appellant.

No. 27313.

Supreme Court of Appeals of
West Virginia.

Submitted June 13, 2000.

Decided July 11, 2000.

Franklin D. Cleckley, Esq., Morgantown, West Virginia, and Patrick N. Wilson, Esq., Fairmont, West Virginia, Attorneys for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

MAYNARD, Chief Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Marion County entered on April 19, 1999. In that order, the circuit court sentenced the appellant and defendant below, Thomas Snodgrass, to an indeterminate term of one to five years in the West Virginia State Penitentiary for his conviction of child abuse creating a risk of injury. The court further sentenced the appellant to one year in the Marion County Jail for his conviction of destruction of property and to one year in the Marion County Jail for his conviction of fleeing an officer.

In this appeal, the appellant contends that the circuit court committed constitutional error when it excluded the testimony of defense witness Lawrence Barnette. The appellant also contends that the evidence was insufficient to establish child abuse as a matter of law. The appellant further asserts that the circuit court erred by denying his motion to suppress his custodial statements. Finally, the appellant argues that the circuit court committed reversible error by improperly admitting the rebuttal testimony of Karen Caufield.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed.

I.

The appellant's convictions arose out of a domestic dispute with his ex-wife, Kim Haught. The dispute occurred on June 27, 1997, when Mrs. Haught and her husband, Matt Haught, arrived early to pick up Lee, the appellant and Mrs. Haught's son. Lee had spent the week with the appellant who maintained that Mrs. Haught was not supposed to pick him up until two days later. Mrs. Haught claimed that she was only two hours early.

When the Haughts arrived, the appellant was on a tractor mowing hay. Mrs. Haught put Lee in her car and started to drive away. The appellant approached the car to see what

was happening. After some discussion, the Haughts drove away. The appellant got his car and followed the Haughts down the road. The Haughts claim that the appellant "chased" them and pulled his car in front of their car forcing them to turn down a dead-end road. However, a defense witness testified that the appellant did not pass the Haughts' car or exhibit any other improper driving behavior.

Eventually, the vehicles stopped. According to the Haughts, the appellant jumped on the hood of their car, tore off a side mirror, and broke the passenger side window with a rock causing glass to fall on all the occupants of the vehicle. Mrs. Haught testified that Lee sustained scratch marks and a cut finger from the broken glass. The appellant maintains that he jumped on the hood of the Haughts' car to keep them from running over him. He claims that he picked up a rock in self-defense against Matt Haught and that the rock went through the window when they got into a struggle.

Sergeant Donald Wheeler, a police officer from the town of Mannington, was the first to arrive on the scene. He had been notified by the Marion County Sheriff's Department which had been telephoned by Mrs. Haught on a cellular phone shortly after the dispute began. Sergeant Wheeler had been instructed not to allow anyone to leave the scene. Upon his arrival, the appellant told Sergeant Wheeler that nothing had happened and nothing was wrong. Shortly thereafter, two deputies from the Marion County Sheriff's Department arrived. After talking to the Haughts, one of the officers approached the appellant and told him he was under arrest.[1] The appellant attempted to run away, but the officers tackled him. He kicked one of the officers in the face before being subdued.

Following a three-day trial that began on July 28, 1998, the appellant was found guilty

of child abuse creating a risk of injury, destruction of property, and fleeing an officer. He was acquitted of domestic battery of Mrs. Haught, battery of Mr. Haught, and unlawful assault on a police officer.[2]

## II.

The appellant's primary assignment of error concerns the circuit court's refusal to allow defense witness Lawrence Barnette to testify. The appellant contends that by excluding Mr. Barnette's testimony, the circuit court violated his right to compulsory process under the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution.[3] The circuit court refused to allow Mr. Barnette to testify because the appellant had not provided the State with a correct phone number for him pursuant to a pretrial discovery order.

Almost a month before trial, the appellant gave the State the names of fifty potential witnesses. The misspelled name of "Lawrence Burnett" was on the list. No addresses or telephone numbers were listed with any of the witnesses. Thus, the State filed a motion to exclude the testimony of all the defense witnesses, or in the alternative, to compel the appellant to disclose the addresses and telephone numbers of the witnesses along with a brief synopsis of their expected testimony. On July 20, 1998, the circuit court ruled that it would prohibit these witnesses from testifying unless the defense provided the State with the telephone numbers and/or addresses of the witnesses by 4:00 p.m. on July 22, 1998. In response, the appellant provided more specific information about eleven of the witnesses, and at some point, the State was given a phone number for Mr. Barnette. However, when the prosecutor called the phone number, he was told

---

1. The appellant maintains that he was never told that he was under arrest.

2. One count of child abuse of the Haughts' 16-month-old daughter, Ali, who was also a passenger in the car on June 27, 1997, was dismissed prior to trial.

3. The Sixth Amendment to the United States Constitution provides, in pertinent part, that

"[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor[.]" Likewise, Article III, Section 14 of the West Virginia Constitution provides that, "[i]n all such [criminal] trials ... there shall be awarded to [the accused] compulsory process for obtaining witnesses in his favor."

that Mr. Barnette did not live at that residence.

Mr. Barnette appeared on the first day of trial after having been served with a subpoena by the appellant's process server the previous day. " An investigator for the State approached Mr. Barnette at that time, but he refused to talk to him. When Mr. Barnette was called to testify on the second day of trial, the State objected on the grounds that it had not been given a correct phone number for Mr. Barnette and as a result, had been unable to contact him prior to trial. Counsel for the appellant responded that he had given the State the only phone number he had for Mr. Barnette and that even after Mr. Barnette was served the subpoena, he did not have an address or a correct phone number because Mr. Barnette was found on the street.

The appellant proffered that Mr. Barnette would testify that he was at the Satterfield farm where the altercation took place on June 27, 1997. He further stated that Mr. Barnette would testify that he observed a red car come down the road to the Satterfield farm and turn around. About a half hour later, Mr. Barnette observed the vehicle come back, this time followed by a white car.

The appellant claimed that Mr. Barnette's testimony supported his theory that his ex-wife had initiated the dispute so that she could obtain exclusive custody of Lee. He claimed that Mrs. Haught had "set him up" because she knew that he would follow her if she picked Lee up early. The appellant stated that Mr. Barnette's testimony showed that Mrs. Haught was selecting the site where she would drive to once he began following her.

■ In State v. Ward, 188 W.Va. 380, 424 S.E.2d 725 (1991), this Court upheld a trial court's refusal to allow a defense rebuttal witness to testify. Counsel for the defendant failed to disclose the witness to the State prior to trial, and in addition, the witness violated the trial court's sequestration order. With respect to the failure to disclose the witness, this Court, adopting the holding of the United States Supreme Court in Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98

L.Ed.2d 798 (1988), held in Syllabus Point 1 of Ward that,

Where a trial court is presented with a defendant's failure to disclose the identity of witnesses in compliance with West Virginia Rule of Criminal Procedure 16, the trial court must inquire into the reasons for the defendant's failure to comply with the discovery request. If the explanation offered indicates that the omission of the witness' identity was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it is consistent with the purposes of the compulsory process clause of the sixth amendment to the United States Constitution and article [III], section 14 of the West Virginia Constitution to preclude the witness from testifying.

■ In the case sub judice, the circuit court found that the appellant had knowledge of where Mr. Barnette could be located and had failed to give the State proper notice. However, the evidence shows that Mr. Barnette was not located by the process server until the day prior to trial, and that the appellant still did not have an address or telephone number for him because he was found on the street. The only phone number the appellant had for Mr. Barnette was the one given to the State prior to trial. Evidently, by calling that phone number, the process server was able to ascertain that Mr. Barnette was in the area and eventually, he located him on the street. The State apparently did not make any further attempt to locate Mr. Barnette after calling the phone number and learning that Mr. Barnette did not live at that residence anymore.

Unlike the defendant's attorney in Ward, who knew about the witness and the content of his testimony three months prior to trial, the appellant's counsel in this case never spoke to Mr. Barnette prior to trial. However, Mr. Barnette was disclosed as a potential defense witness. In addition, when Mr. Barnette appeared on the first day of trial, he refused to speak with the State, indicating that he probably would not have been cooperative if he had been previously located.

After reviewing all of the evidence, we are unable to conclude that the appellant's failure to disclose Mr. Barnette's location was willful or motivated by a desire to obtain tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence. The evidence shows that Mr. Barnette was essentially "homeless" and that appellant's process server only located him on the street one day prior to trial. Contrary to the circuit court's ruling, there is no evidence in the record that a mutual friend kept the appellant informed of Mr. Barnette's location. Mr. Barnette's testimony was crucial to the appellant's theory of the case, and thus, we find that the circuit court erred by refusing to allow him to testify. Accordingly, we reverse the final order of the circuit court and remand this case for a new trial.

In light of our finding that the appellant's convictions must be reversed because the circuit court erred by excluding Mr. Barnette's testimony, we need not address the remaining assignments of error. However, for the purpose of providing guidance to the circuit court upon remand, we feel compelled to examine the parties' arguments with respect to the meaning of W.Va.Code § 61–8D–3(c) (1996). This statute provides that,

> Any person who abuses a child and by the abuse creates a substantial risk of serious bodily injury or of death to the child is guilty of a felony and, upon conviction thereof, shall be fined not more than three thousand dollars and confined to the custody of the division of corrections for not less than one nor more than five years.

W.Va.Code § 61–8D–3(c). W.Va.Code § 61–8D–1(1) (1988) defines "abuse" as "the infliction upon a minor of physical injury by other than accidental means."

Initially, the appellant argued that the evidence was insufficient to support his conviction because it did not show that his son had suffered an "injury" as set forth in the statute. During oral argument, the appellant's counsel conceded that under the statute, a child did not have to suffer a serious bodily injury. However, counsel argued that at least a "substantial probability" of injury was necessary. In other words, counsel asserted that the term "risk," which is not specifically defined by the statute, means "probability." In response, the State asserted that the evidence only needed to show a "substantial possibility" of injury to support a conviction under the statute.

█ In accordance with this Court's longstanding rules of statutory construction, " '[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syllabus Point 2, *Szturm v. Huntington Blizzard Hockey Associates Limited Partnership*, 205 W.Va. 56, 516 S.E.2d 267 (1999). In addition, " '[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus Point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). However, "[e]ach word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

█ Following these rules of statutory construction, we agree with the State's conclusion that the term "risk" denotes a "possibility." The common, ordinary, and accepted meaning of the word "risk" is a "possibility of loss or injury." *Webster's New Collegiate Dictionary* 992 (1981). Therefore, applying this definition to the statute, we hold that the offense of child abuse creating a risk of injury as set forth in W.Va.Code § 61–8D–3(c) is committed when any person inflicts upon a minor physical injury by other than accidental means and by such action, creates a substantial possibility of serious bodily injury or death.[4]

---

**4.** Although no instructional error was asserted in this appeal, we note that State's Instruction No. 9 occasionally omitted the words "substantial risk of serious bodily injury" as set forth in

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Marion County entered on April 19, 1999, is reversed, and this case is remanded for a new trial.

Reversed and remanded.

W.Va.Code § 61–8D–3(c). Upon remand, the instruction should use the full language of the statute consistent with our holding today.